**EXHIBIT A**

**General Civil Case Filing Information Form (Non-Domestic)**

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**Court**
☐ Superior
☑ State

**County** Gwinnett

**Docket #** 17 C 01208-6

**Date Filed** 03-03-2017 MAR -6 AM 10: 28
MM-DD-YYYY

RICHARD ALEXANDER, CLERK

**Plaintiff(s)**

Storey, John W.
Last    First    Middle I.    Suffix Prefix    Maiden

Storey, Suzanne L.
Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

**No. of Plaintiffs** 2

**Defendant(s)**

Owners Insurance Company
Last    First    Middle I.    Suffix Prefix    Maiden

Auto-Owners Insurance Company
Last    First    Middle I.    Suffix Prefix    Maiden

Swinton, Francina
Last    First    Middle I.    Suffix Prefix    Maiden

Last    First    Middle I.    Suffix Prefix    Maiden

**No. of Defendants** 3

**Plaintiff/Petitioner's Attorney**    ☐ **Pro Se**

Last    First    Middle I.    Suffix

Bar # _____

**Check Primary Type (Check only ONE)**

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Presonal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgement Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☐ Other General Civil Specify_____

_____

**If Tort is Case Type:**
(Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify Georgia RICO, Negligent Misrepresentation, Fraud and Deceit

**Are Punitive Damages Pleaded?** ☑ Yes ☐ No

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

## IN THE STATE COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

John W. Storey and Suzanne L. Storey
as the Surviving Parents of John Jared Storey
and as Administrators of the Estate of
John Jared Storey

**# 7 C 01208-6**

CIVIL ACTION
NUMBER:_____

PLAINTIFF

VS.

Owners Insurance Company, Auto-
Owners Insurance Company, and
Francine Swinton

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Andrew B. Cash
Shane E. Bartlett
Cash, Krugler & Fredericks, LLC
5447 Roswell Road, N.E
Atlanta, Georgia 30042

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____6th_____ day of _____March_____, 20 _17_.

Richard T. Alexander, Jr.,
Clerk of State Court

By _____
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

FILED IN OFFICE
CLERK STATE COURT
**IN THE STATE COURT OF GWINNETT COUNTY** GWINNETT COUNTY, GA
**STATE OF GEORGIA**

2017 MAR -6   AM 10: 28

RICHARD ALEXANDER. CLERK

JOHN W. STOREY and SUZANNE L. STOREY, )
as the Surviving Parents of JOHN JARED )
STOREY and as Administrators of the ESTATE of )
JOHN JARED STOREY, )
)
Plaintiffs, )
)
v. )
)
OWNERS INSURANCE COMPANY, )
AUTO-OWNERS INSURANCE COMPANY, and )
FRANCINA SWINTON, )
)
Defendants. )

**17 C 01208-6**

Civil Action No.

**JURY TRIAL DEMANDED**

### COMPLAINT

COMES NOW Plaintiffs, John W. Storey and Suzanne L. Storey, as the Surviving Parents of John Jared Storey and as Administrators of the Estate of John Jared Storey, and file this, their Complaint against Defendants Owners Insurance Company, Auto-Owners Insurance Company, and Francine Swinton, and respectfully show this Honorable Court the following:

### PARTIES, JURISDICTION, AND VENUE

1.

John Jared Storey ("Jared"), deceased, was the natural born son of John W. Storey and Suzanne L. Storey.  John W. Storey and Suzanne L. Storey are the natural surviving parents of John Jared Storey and are residents of Paulding County, Georgia.

2.

John Jared Storey died intestate.  The Probate Court of Paulding County issued letters of administration appointing John W. Storey and Suzanne L. Storey as Administrators of the Estate of John Jared Storey on February 17, 2016.

3.

Owners Insurance Company ("Owners") is an insurance company organized under the laws of the State of Ohio.  At all times pertinent to this Complaint, Owners was and is in the business of providing and underwriting insurance policies.  This court has personal jurisdiction over Owners because it is authorized to and regularly transacts business and derives profits from business activities in Georgia and maintains a registered agent in Georgia, Shakinah Edwards, CT Corporation, 1201 Peachtree Street, NE, Fulton County, Atlanta, Georgia, where Owners may be properly served by delivering a summons and a copy of this complaint.

4.

Auto-Owners Insurance Company ("Auto-Owners") is an insurance company organized under the laws of the State of Michigan.  At all times pertinent to this Complaint, Auto-Owners was and is in the business of providing and underwriting insurance policies.  Auto-Owners maintains an office located at 1705 Executive Drive South, Gwinnett County, Duluth, Georgia 30096.  This court has personal jurisdiction over Auto-Owners because it is authorized to and regularly transacts business and derives profits from business activities in Georgia and maintains a registered agent in Georgia, Shakinah Edwards, CT Corporation, 1201 Peachtree Street, NE, Fulton County, Atlanta, Georgia, where Auto-Owners may be properly served by delivering a summons and a copy of this complaint.

5.

At all times pertinent to this Complaint, Francina Swinton is an underwriting manager with Owners and Auto-Owners.  Upon information and belief, she presently resides at 970

2

Mulberry Bay Drive, Gwinnett County, Dacula, Georgia 30019, where she may be properly served by delivering a summons and a copy of this complaint.

6.

Jurisdiction is proper because all Defendants are residents of Georgia or subject to the exercise of long-arm jurisdiction.

7.

Venue is proper pursuant to O.C.G.A. § 9-10-93 and pursuant to the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act, § 16-14-11, because a number of the requisite acts outlined below occurred in Gwinnett County, Georgia.

## FACTS

8.

On March 9, 2014, John Jared Storey ("Jared") and his father, John W. Storey, visited Marietta Motor Sports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports") in Cedartown, Georgia.[1]

9.

While attempting a straightforward jump, which he had performed several times before, Jared's 2013 KTM 250SX bike cut out causing the bike to go end over end and causing Jared to fall a significant distance before landing on his head.

---

[1] Marietta Motor Sports, Inc., is the legal name on file with the Georgia Secretary of State for the subject insured of Owners/Auto-Owners. Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

10.

As a result of this fall, Jared suffered serious and permanent catastrophic injuries, including a traumatic brain injury, requiring in excess of $2,000,000.00 in medical treatment alone.

11.

Prior to March 9, 2014, Marietta Motorsports worked on Jared's bike, performing what is known as "re-jetting," which entails adjusting the carburetor to optimize the air fuel mixture and improve performance and efficiency.

12.

Despite Marietta Motorsports' belief that Jared's bike required re-jetting, there was no reason to change or alter the jetting on the bike.

13.

The re-jetting performed by Marietta Motorsports on Jared's bike was also not performed in an appropriate, reasonable, and safe manner.

14.

As a result of the inappropriate and negligent re-jetting by Marietta Motorsports, Jared's bike cut out during the jump on March 9, 2014, resulting in his permanent, catastrophic injuries.

15.

Unbeknownst to Plaintiffs, at the time of the March 9, 2014 incident, Marietta Motorsports maintained three separate policies of insurance with Owners Insurance Company: 1) a Garage Liability Policy (Policy No. 43-737-118-02)("Garage"); 2) a Commercial General Liability Policy (Policy No. 024618-48006341-13)("CGL"); and 3) a Commercial Umbrella Policy (Policy No. 43-737-118-04)("Umbrella").

4

16.

The Umbrella policy's policy period was from October 16, 2013, to October 16, 2014.

17.

On November 14, 2014, Plaintiffs' counsel sent a letter to Auto-Owners pursuant to O.C.G.A. § 33-3-28, requesting identification of all policies of insurance which might provide coverage for the March 9, 2014 incident.

18.

On December 16, 2014, Liza Hendrix, a claims adjuster with Owners/Auto-Owners, responded by letter and facsimile indicating that "Our investigation shows there is no coverage under the policy to pay your claim."

19.

At the time Ms. Hendrix sent this December 16, 2014 letter, Owners/Auto-Owners were aware of insurance policies that provided insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

20.

On March 6, 2015, after attempts to reach Ms. Hendrix were unsuccessful, Plaintiffs' counsel received a voice message from Ms. Hendrix indicating that there was no coverage under the Auto-Owners policy and that "the policy was rescinded back to the date of the incident."

21.

At the time Ms. Hendrix left the March 6, 2015 voice message, Owners/Auto-Owners had knowledge of insurance policies providing insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

22.

In response to this message, on March 6, 2015, Plaintiffs' counsel sent a letter to Ms. Hendrix at Owners/Auto-Owners asking for clarification on the coverage issues and again requesting the insurance policy coverages afforded Marietta Motorsports.

23.

On August 17, 2015, Plaintiffs' counsel received a letter and email from coverage counsel for Owners/Auto-Owners including "...policy documents issued to Marietta Motorsports, Inc. by Owners Insurance Company." The documents provided were portions of the Garage and CGL policies, along with "communications relevant to these policy documents." The Umbrella policy was not identified.

24.

At the time of this August 17, 2015 communication, Owners/Auto-Owners had actual knowledge of the Umbrella policy providing coverage for Marietta Motorsports, but they intentionally did not identify this policy.

25.

On September 2, 2015, Plaintiffs' counsel sent a letter to coverage counsel for Owners/Auto-Owners, again requesting complete copies of the polices provided by Owners specifically: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 024618-80006341-13.

26.

By letter dated September 10, 2015, Plaintiffs' counsel forwarded to coverage counsel for Owners/Auto-Owners medical records documenting the permanent, catastrophic injuries suffered

by Jared as well as medical bills at that time totaling $2,153,339.35.  Also, Plaintiffs' counsel again requested complete copies of the previously identified policies of insurance.

27.

On September 18, 2015, coverage counsel for Owners/Auto-Owners forwarded complete copies of the Garage and CGL policies, as well as Policy No. 024618-80006341-13.  The Umbrella policy was not identified nor provided.

28.

Despite having actual knowledge of the Umbrella policy, Owners/Auto-Owners intentionally withheld those policy documents.

29.

On September 28, 2015, as the court-appointed guardians and conservators of their son, Plaintiffs issued a demand for $2,000,000.00 to Marietta Motorsports and Owners/Auto-Owners, contingent upon the accuracy of the then stated insurance coverage limits.

30.

On October 16, 2015, Plaintiffs' counsel emailed coverage counsel for Owners/Auto-Owners indicating that Marietta Motorsports' counsel had mentioned the possible existence of an umbrella or excess policy, and Plaintiffs requested a copy of that policy.  This was the first time Plaintiffs learned of the Umbrella policy.

31.

By response email, on October 16, 2015, coverage counsel for Owners/Auto-Owners indicated that he had recently been informed by Owners/Auto-Owners that there was in fact an Umbrella policy, which "did exist at one time but was canceled before this accident" and which Owners/Auto-Owners represented was "signed by the insured."

7

32.

Attached to the October 16, 2015 email, coverage counsel for Owners/Auto-Owners provided a copy of the Umbrella policy as well as the referenced cancellation ("Cancellation").

33.

On October 30, 2015, coverage counsel for Owners/Auto-Owners sent a letter and facsimile, responding to Plaintiffs' settlement demand and indicated that the Umbrella policy "was clearly canceled effective January 31, 2014, before this incident ever occurred" and went on to state that given the policy language of the Garage and CGL policies, there was only $1,000,000.00 in available insurance limits due to a duplication of coverage provision, which Marietta Motorsports was tendering in response to the demand.

34.

At the time Owners/Auto-Owners issued the October 30, 2015 letter and offer, they knew that the Umbrella policy was not canceled on January 31, 2014, and was still in effect at the time of the March 9, 2014 incident.

35.

Relying upon Owners/Auto-Owners' statements that there was only $1,000,000.00 in available insurance coverage afforded to Marietta Motorsports for the loss, on December 4, 2015, Plaintiffs, as the court appointed guardians and conservators, accepted Owners/Auto-Owners settlement offer for the stated limits of $1,000,000.00 ("Settlement").

36.

Both before and after the Settlement, Plaintiffs' counsel had numerous telephone calls with coverage counsel for Owners/Auto-Owners wherein Owners/Auto-Owners misrepresented

the insurance coverage available to Marietta Motorsports for the March 9, 2014 loss, and misrepresented the existence and cancellation of the Umbrella policy.

37.

On December 10, 2015, John Jared Storey died as a result of his injuries from the March 9, 2014 incident.

38.

On February 17, 2016, Plaintiffs were appointed as Administrators of the Estate of John Jared Storey by the Probate Court of Paulding County, Georgia.

39.

On February 19, 2016, Plaintiffs executed a Settlement Agreement and Release of All Claims.

40.

As part of the Settlement, Owners/Auto-Owners issued an "Affidavit of Insurance," signed by Defendant Francina Swinton, in her capacity as underwriting manager, and attesting that the "only polices of insurance potentially in effect" as of the March 9, 2014, loss were the Garage and CGL policies.

41.

Defendants also added language to the Affidavit of Insurance indicating and affirming that Umbrella policy (Policy No. 43-737-118-04), was effectively canceled on January 31, 2014 and did not provide coverage for the loss. This affidavit was executed by Defendant Swinton on December 2, 2015.

9

42.

In signing the Settlement Agreement and Release of All Claims, Plaintiffs expressly relied upon the affidavit of Owners/Auto-Owners that $1,000,000.00 was the only coverage provided by Owners/Auto-Owners for this claim, and this reliance is an express term of the settlement agreement.

43.

At the time Owners/Auto-Owners and Defendant Swinton executed the Affidavit of Insurance, Defendants had actual knowledge that the Umbrella policy was not canceled on January 31, 2014, and was still in effect at the time of the March 9, 2014 loss.

44.

The Owners' Umbrella policy contains a Georgia "Policy Cancellation and Nonrenewal Endorsement" stating in particular:

1. Cancellation

   b. We may cancel this policy by mailing or delivering written notice stating the specific reason(s) for cancellation to you at your last address known to us. This notice shall be mailed or delivered at least:

      (1) 10 days prior to the effective date when cancellation is for non-payment of premium; or

      (2) At least 30 days prior to the effective date when cancellation is for other than nonpayment of premium and this policy has been in force less than 60 days and is not a renewal policy; or

(3)  At least 45 days prior to the effective date when cancellation is for other than nonpayment of premium and this policy has been in force 60 days or more or is a renewal policy.

45.

The Umbrella policy was in force and effect for more than 60 days.

46.

The Cancellation was not signed by its insured as Defendants previously stated, but rather was signed by someone else, believed to be the producer, with a note "For Insured."

47.

According to the Cancellation, the "Reason for Cancellation" was "PER CARRIER," and not "Requested by Insured."

48.

Marietta Motorsports did not request cancellation of the Umbrella policy.

49.

The Cancellation was requested by Owners/Auto-Owners.

50.

The Cancellation was not for "nonpayment of premiums" by Marietta Motorsports.

51.

The Cancellation provided by Owners/Auto-Owners was signed on February 3, 2014, not January 31, 2014, as has been repeatedly misrepresented by Owners/Auto-Owners.

11

52.

At the time of each of its communications concerning the Umbrella policy, Owners/Auto-Owners knew its insured had not requested nor signed the Cancellation and knew the Cancellation was not signed on January 31, 2014, as previously stated.

53.

Owners/Auto-Owners sent a notice of the Cancellation to Marietta Motorsports on February 7, 2014.

54.

The Umbrella policy was still in effect as of March 9, 2014.

55.

Defendants engaged in a campaign and enterprise of intentionally misrepresenting the amount of insurance coverage afforded Marietta Motorsports for the sole purpose of deceiving Plaintiffs in an effort to deprive them of additional insurance coverage afforded for the March 9, 2014 loss.

56.

Defendants' misrepresentations concerning the existence and cancellation of the Umbrella policy were fraudulent and communicated with the intent to deceive Plaintiffs.

57.

Owners/Auto-Owners' and Defendant Swinton's Affidavit of Insurance and the statement that the Umbrella policy "was canceled effective January 31, 2014" are false and were calculated to mislead Plaintiffs.

58.

Owners/Auto-Owners has repeatedly stated that the Umbrella policy "was canceled effective January 31, 2014." This statement, and similar statements, are false and were calculated to mislead Plaintiffs.

59.

Defendants intentionally defrauded Plaintiffs and not only initially misrepresented the existence of the Umbrella policy, but also falsely stated that the Umbrella policy had been canceled effective January 31, 2014.

60.

The injuries suffered by John Jared Storey, which ultimately led to his death, far exceed the combined limits afforded under the insurance policies provided by Owners/Auto-Owners to Marietta Motorsports.

61.

Had Plaintiffs known that the Umbrella policy was still in effect as of the date of loss, Plaintiffs would not have entered into the Settlement for $1,000,000.00 and would have insisted upon payment of the Umbrella policy limits of an additional $1,000,000.00.

## COUNT I: VIOLATION OF GEORGIA RICO (RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS) ACT

62.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

63.

Through a pattern of racketeering activity, established by the predicate acts listed below, Defendants acquired or maintained an interest in or control of money by wrongfully and falsely

denying the existence of additional insurance coverage available for Plaintiffs' injuries and settlement, subjecting Defendants to liability under the Georgia's Racketeer Influenced and Corrupt Organization Act, O.C.G.A. § 16-14-1 *et seq.* ("Georgia RICO"), as more fully set out below.

64.

The Georgia RICO pattern of racketeering activity engaged in by Defendants consisted of more than two acts of racketeering activity, the most recent of which occurred within four years of the commission of a prior act of racketeering activity.

### *Mail Fraud*

65.

Defendants, by and through their agents, employees and representatives, have engaged in more than one act of mail fraud in violation of 18 U.S.C. § 1341. Mail fraud constitutes racketeering activity under O.C.G.A. § 16-14-3(5)(C), which incorporates conduct defined by federal RICO, specifically 18 U.S.C. § 1961(1)(A), as acts of racketeering activity, including mail fraud.

66.

Having devised a scheme or artifice to defraud, and for the purpose of wrongfully acquiring or maintaining control of money and to preclude Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son, Defendants did deposit and send false information, statements, letters, writings, and communications to be delivered by the U.S. Postal Service for the purpose of executing that scheme.

67.

On December 16, 2014, in response to Plaintiffs' inquiry of available insurance, Defendants sent a letter falsely stating that "Our investigation shows there is no coverage under the policy to pay your claim." with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

68.

On August 17, 2015, in response to Plaintiffs' continued requests for disclosure of all available insurance, Defendants through their counsel sent a letter misrepresenting the insurance coverages available to Defendants' insured and failing to fully disclose all available insurance, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

69.

On September 18, 2015, in response to Plaintiffs' continued requests for full disclosure of all available insurance, Defendants through their counsel sent a letter misrepresenting the insurance coverages available to Defendants' insured and failing to fully disclose all available insurance, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

70.

On October 30, 2015, Defendants through their counsel sent a letter misrepresenting the insurance coverages available to Defendants' insured and falsely stating that the recently identified Umbrella policy "was clearly canceled effective January 31, 2014, before this incident ever occurred." This letter was sent by Defendants with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

71.

When sending the Settlement Agreement and Release of All Claims to Plaintiffs, Defendants sent false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

72.

When sending the Affidavit of Insurance to Plaintiffs, Defendants sent false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

73.

Defendants acted willfully and with intent to defraud and to wrongfully acquire and maintain control of money and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

74.

Defendants' mail fraud was intended to facilitate and perpetuate their scheme to defraud and deprive Plaintiffs of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

75.

As a result of the scheme, Defendants did wrongfully acquire and maintain control of money.  Further, Defendants did deprive Plaintiffs of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, which in turn

resulted in Plaintiffs agreeing to a settlement for $1,000,000 when they would have only accepted $2,000,000 had they been rightly informed of the actual coverages and limits available.

### *Wire Fraud*

#### 76.

Defendants, by and through their agents, employees and representatives, have engaged in more than one act of wire fraud in violation of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity under O.C.G.A. § 16-14-3(5)(C), which incorporates conduct defined by federal RICO, specifically 18 U.S.C. § 1961(1)(A), as acts of racketeering activity, including wire fraud.

#### 77.

Having devised a scheme or artifice to defraud, and for the purpose of wrongfully acquiring or maintaining control of money and to preclude Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son, Defendants transmitted or caused to be transmitted by means of wire communication and interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing that scheme.

#### 78.

On December 16, 2014, in response to Plaintiffs' inquiry of available insurance, Defendants transmitted a false statement "Our investigation shows there is no coverage under the policy to pay your claim," with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

79.

On March 6, 2015, Defendants transmitted a false statement that there was no insurance coverage provided and that "the policy was rescinded back to the date of the incident," with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

80.

On August 17, 2015, in response to Plaintiffs' continued requests for disclosure of all available insurance, Defendants transmitted a false and misleading statement concerning the insurance coverages available to Defendants' insured and failing to fully disclose all available insurance. The intent of this false and misleading transmission was to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

81.

On October 16, 2015, in response to Plaintiffs' continued requests for full disclosure of all available insurance, Defendants transmitted false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

82.

On October 30, 2015, Defendants transmitted false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

83.

When sending the Settlement Agreement and Release of All Claims to Plaintiffs, Defendants transmitted false and misleading statements concerning the existence and

cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

84.

When sending the Affidavit of Insurance to Plaintiffs, Defendants transmitted false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

85.

Through numerous telephone calls with Plaintiffs, Defendants transmitted false and misleading statements concerning the existence and cancellation of the Umbrella policy, with the intent to mislead, deceive, and frustrate Plaintiffs, and in furtherance and execution of Defendants' scheme.

86.

Defendants acted willfully and with intent to defraud and to wrongfully acquire and maintain control of money and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

87.

Defendants' wire fraud was intended to facilitate and perpetuate their scheme to defraud and deprive Plaintiff of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

88.

As a result of the scheme, Defendants did wrongfully acquire and maintain control of money. Further, Defendants did deprive Plaintiffs of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, which in turn resulted in Plaintiffs agreeing to a settlement for $1,000,000 when they would have only accepted $2,000,000 had they been rightly informed of the actual coverages and limits available.

### *False Statements and Writings*

89.

Defendants, by and through their agents, employees and representatives, have engaged in more than one act of knowingly and willfully making or using false statements and writings in a matter within the jurisdiction of a department or agency of state government or of the government of any county, city, or other political subdivision of this state in violation of O.C.G.A. § 16-10-20. Use of a false writing or statement as to matters within the jurisdiction of state or political subdivisions constitutes racketeering activity under O.C.G.A. § 16-14-3(5)(A).

90.

Having devised a scheme or artifice to defraud, and for the purpose of wrongfully acquiring or maintaining control of money and to preclude Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son, Defendants sent a signed and notarized false statement, the Affidavit of Insurance, with the understanding that said Affidavit of Insurance may be used in subsequent litigation concerning the Settlement and with the actual knowledge that the statements concerning the availability and Cancellation of the Umbrella policy were in fact false.

20

91.

Defendants acted willfully and with intent to defraud and to wrongfully acquire and maintain control of money and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

92.

Defendants' false statements were intended to facilitate and perpetuate their scheme to defraud and deprive Plaintiff of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, and to prevent Plaintiffs from recovering additional available insurance funds for the injuries and subsequent death of their son.

93.

As a result of the scheme, Defendants did wrongfully acquire and maintain control of money. Further, Defendants did deprive Plaintiffs of information concerning all available insurance coverage afforded Defendants' insured for the March 9, 2014 loss, which in turn resulted in Plaintiffs agreeing to a settlement for $1,000,000 when they would have only accepted $2,000,000 had they been rightly informed of the actual coverages and limits available.

## Relationship Between the Predicate Acts of Racketeering Activity

94.

Defendants have independently and jointly endeavored to violate O.C.G.A. § 16-14-4(a), in violation of O.C.G.A. § 16-14-4(c).

95.

Defendants have also conspired individually and jointly with its employees, officers, executives, and adjusters to violate O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(c).

21

96.

Defendants' acts of racketeering activity involve long-term racketeering activity that have and continue to exist.

97.

The acts of racketeering activity committed by Defendants have the same or similar objective and results, namely, the avoidance of further financial loss by Defendants, fraudulently depriving Plaintiffs of funds available to cover the March 9, 2014 loss, causing Plaintiffs to spend money on attorneys' fees and court costs, and to provide financial gain to Defendants.

98.

The acts of racketeering activity committed by Defendants are otherwise related by distinguishing characteristics including, but not limited to, the involvement and collusion of Defendants, their employees, agents, executives, adjusters, and officers, and other members of the association-in-fact enterprise identified herein.

99.

The acts of racketeering activity committed by Defendants have the same or similar victims, specifically Plaintiffs.

100.

The acts of racketeering activity committed by Defendants have the same or similar methods of commission in that they involved mail fraud, wire fraud, and false statements and were committed in furtherance of a scheme to defraud Plaintiffs.

101.

The acts of racketeering activity committed by Defendants are interrelated by distinguishing characteristics and are not isolated incidents, in that the acts involved the same or

similar misrepresentations, the same or similar modes of commission, the same or similar financial benefits to Defendants, and the same or similar efforts to conceal information and misconduct.

102.

As a result of Defendants' scheme, Defendants did acquire or maintain control of money, causing Plaintiffs to spend money on attorneys' fees and court costs.

103.

Plaintiffs have been injured by reason of Defendants' violation of O.C.G.A. § 16-14-4(a), and are entitled to recover three times the actual damages sustained.

104.

In addition, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, and want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiffs to receive punitive damages sufficient to deter, penalize, or punish Defendants in light of the circumstances of the case.

105.

Pursuant to O.C.G.A. § 16-14-6(c), Plaintiffs are entitled to recover their attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred.

## COUNT II: NEGLIGENT MISREPRESENTATION

106.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

107.

Upon receiving notice of the underlying March 9, 2014 loss, Defendants proceeded to misrepresent facts to Plaintiffs, and the misrepresentations continue, including initial denial of any coverage, failure to disclose the Umbrella policy, and upon disclosure of the Umbrella policy, subsequently misrepresenting the cancellation of the Umbrella policy. Defendants knew these statements were false.

108.

Defendants intended for Plaintiffs to rely on these representations both in pursuit of their claims for the March 9, 2014 loss and at the time of Settlement of those claims, and Plaintiffs did in fact rely on these misrepresentations throughout and including at time of Settlement.

109.

Defendants' statements and representations were false, misleading, and caused Plaintiffs harm.

110.

Defendants' representations were made both intentionally and negligently to induce Plaintiffs to take a course of action and enter into a settlement for less than the full limits of insurance.

111.

As a result of Defendants' negligent misrepresentations, Plaintiffs suffered economic injuries and are entitled to recover damages in an amount to be determined by a jury.

24

## COUNT III: FRAUD AND DECEIT (O.C.G.A. § 51-6-2)

112.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

113.

Defendants, by and through their agents, employees or representatives, made willful misrepresentations of material fact to Plaintiffs with the intent to deprive Plaintiffs of additional recovery for the wrongful death of their son.

114.

Defendants, by and through their agents, employees or representatives, made these willful misrepresentations of material fact to Plaintiffs with the additional intent of protecting Defendants' business interests.

115.

As a result of Defendants' fraud and deceit, Plaintiffs have acted to their detriment and have been damaged.

## COUNT IV: ATTORNEY FEES

116.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

117.

Plaintiffs assert a claim for expenses of litigation against Defendants, including attorney's fees, pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis. Defendants have acted in bad faith, were stubbornly litigious, and have caused Plaintiffs undue

expense, such that Plaintiffs are entitled to recover their necessary expenses of litigation, including an award of reasonable attorneys' fees.

## DAMAGES

### 118.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

### 119.

Plaintiffs are entitled to recover all damages against Defendants in an amount to be determined by the enlightened conscience of a fair and impartial jury and as demonstrated by the evidence, including all compensatory damages and damages addressed herein, all damages allowed under the Georgia RICO statute, all damages under O.C.G.A. § 13-6-11, and punitive damages to punish and deter Defendants from engaging in such conduct in the future.

## PUNITIVE DAMAGES

### 120.

Plaintiffs hereby incorporate the allegations in the above-numbered paragraphs as if fully set forth herein.

### 121.

Defendants, by engaging in intentional and deliberate acts of willful misrepresentations, fraud and deceit, collectively acted with the specific intent to cause harm to Plaintiffs justifying an award of uncapped punitive damages against all Defendants.

26

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for the following relief:

(a)    that summons issue requiring Defendants to appear as provided by law to answer this Complaint;

(b)    that Defendants be timely served with process;

(b)    that Plaintiffs have a trial by jury on all issues and claims;

(c)    that Plaintiffs recover all damages authorized by Georgia law against all Defendants in an amount to be determined by the enlightened conscience of the jury, including but not limited to treble damages, punitive damages, and attorney fees;

(d)    that all costs be cast against Defendants; and

(f)    for such other and further relief as the Court shall deem just and appropriate.

This 3rd day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

27

THE VICKERY LAW FIRM

*L. Vickery / by SEB*

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bulloch Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

28

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

2017 MAR -6 AM 10: 31

RICHARD ALEXANDER, CLERK

| | |
|---|---|
| JOHN W. STOREY and SUZANNE L. STOREY, ) | |
| as the Surviving Parents of JOHN JARED ) | |
| STOREY and as Administrators of the ESTATE of ) | |
| JOHN JARED STOREY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| OWNERS INSURANCE COMPANY, ) | |
| AUTO-OWNERS INSURANCE COMPANY, and ) | |
| FRANCINA SWINTON, ) | |
| ) | |
| Defendants. ) | |

**17 C 01208-6**

Civil Action No.

**PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**
**TO DEFENDANT AUTO-OWNERS INSURANCE COMPANY**

COME NOW, Plaintiffs in the above-styled action, and pursuant to O.C.G.A. § 9-11-36,

submit the following Requests for Admission to Defendant Auto-Owners Insurance Company:

**DEFINITIONS**

1. "**You**," "**your**," "**Auto-Owners**," or "**Defendant**" means Auto-Owners Insurance

Company upon whom these requests have been served, their attorneys, adjusters, agents and

employees.

2. "**Marietta Motorsports**," "**Insured**," or "**your insured**" means Marietta Motor Sports,

Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of

Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-

Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports,

Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters,

Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

3.     "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

4.     "**Umbrella policy**" means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

5.     "**Cancellation**" means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

6.     "**Settlement Release**" means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

7.     "**Affidavit of Insurance**" or "**Affidavit**" means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## <u>REQUESTS</u>

### 1.

Service of process on you is proper.

### 2.

You are properly identified in the style of the Complaint.

### 3.

You are subject to the jurisdiction of this Court.

2

4.

Venue is proper in this Court.

5.

There has not been a failure to join a necessary or indispensable party to this action.

6.

On November 14, 2014, Plaintiffs' counsel sent a letter to Auto-Owners, pursuant to O.C.G.A. § 33-3-28, requesting identification of all policies of insurance which might provide coverage to Marietta Motorsports for the March 9, 2014 incident.

7.

On December 16, 2014, Liza Hendrix, a claims adjuster with Auto-Owners, sent a letter to Plaintiffs' counsel concerning Claim/File No. 87-953-2014, indicating "Our investigation shows there is no coverage under the policy to pay your claim."

8.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Auto-Owners had knowledge of insurance policies issued to Marietta Motorsports, including Policy No. 43-737-118-02, Policy No. 024618-48006341-13, and Policy No. 43-737-118-04.

9.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Auto-Owners had knowledge that Policy No. 43-737-118-02 provided coverage for the March 9, 2014 incident.

3

10.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Auto-Owners had knowledge that Policy No. 024618-48006341-13 provided coverage for the March 9, 2014 incident.

11.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Auto-Owners had knowledge that the Umbrella policy provided coverage for the March 9, 2014 incident.

12.

On March 6, 2015, in reference to Claim/File No. 87-953-2014 and on behalf of Auto-Owners, Ms. Liza Hendrix left a voice message for Plaintiffs' counsel indicating that there was no coverage and that "the policy was rescinded back to the date of the incident."

13.

At the time Ms. Hendrix left the March 6, 2015 voice message, Auto-Owners had knowledge of the insurance policies issued to Marietta Motorsports including Policy No. 43-737-118-02, Policy No. 024618-48006341-13, and Policy No. 43-737-118-04.

14.

At the time Ms. Hendrix left the March 6, 2015 voice message, Auto-Owners had knowledge that Policy No. 43-737-118-02 potentially provided coverage for the March 9, 2014 incident.

4

15.

At the time Ms. Hendrix left the March 6, 2015 voice message, Auto-Owners had knowledge that Policy No. 024618-48006341-13 potentially provided coverage for the March 9, 2014 incident.

16.

At the time Ms. Hendrix left the March 6, 2015 voice message, Auto-Owners had knowledge that the Umbrella policy provided coverage for the March 9, 2014 incident.

17.

On August 17, 2015, counsel for Auto-Owners sent a letter and email including "policy documents issued to Marietta Motorsports, Inc. by Owners Insurance Company."

18.

The August 17, 2015, letter and email from counsel for Auto-Owners did not identify or contain any documents referencing the Umbrella policy.

19.

At the time of the August 17, 2015, letter and email from Auto-Owners' counsel, Auto-Owners had knowledge of the Umbrella policy.

20.

At the time of the August 17, 2015, letter and email from Auto-Owners' counsel, Auto-Owners had knowledge that the Umbrella policy provided coverage for the March 9, 2014 incident.

21.

On September 2, 2015, Plaintiffs' counsel sent a letter to counsel for Auto-Owners, requesting complete copies of the polices: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 024618-80006341-13.

22.

On September 10, 2015, Plaintiffs' counsel forwarded to counsel for Auto-Owners medical records documenting the permanent, catastrophic injuries suffered by Jared including medical bills at that time totaling $2,153,339.35, also requested complete copies of the policies of insurance for Marietta Motorsports.

23.

On September 18, 2015, counsel for Auto-Owners forwarded complete copies of: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 024618-80006341-13.

24.

Auto-Owners had knowledge of the Umbrella policy when forwarding the Garage and CGL policies, but did not forward the Umbrella policy.

25.

On September 28, 2015, as the court-appointed guardians and conservators of their son, Plaintiffs issued a demand for $2,000,000.00 to Marietta Motorsports and Auto-Owners, contingent upon the accuracy of the then stated insurance coverage limits.

6

26.

On October 16, 2015, counsel for Auto-Owners Insurance Company confirmed the existence of the Umbrella policy and provided Plaintiffs with a copy of the policy and the Cancellation request.

27.

October 16, 2015, was the first time Auto-Owners Insurance Company disclosed the Umbrella policy to Plaintiffs.

28.

At the time Auto-Owners disclosed the Umbrella policy, Auto-Owners was aware that the Umbrella policy potentially provided insurance coverage for the March 9, 2014 incident.

29.

At the time Auto-Owners disclosed the Umbrella policy, Auto-Owners was aware that the Umbrella policy provided insurance coverage for the March 9, 2014 incident.

30.

The Umbrella policy's initial policy period was October 16, 2013 through October 16, 2014.

31.

Prior to the Cancellation request, the Umbrella policy had been in effect and providing insurance coverage to Marietta Motorsports for more than 60 days.

32.

Auto-Owners stated to Plaintiffs that the Cancellation request had been signed by the insured, Marietta Motorsports.

33.

The Cancellation request related to the Umbrella policy was not signed by Marietta Motorsports.

34.

Marietta Motorsports never requested the Cancellation of the Umbrella policy.

35.

The Cancellation request states it was requested "PER CARRIER."

36.

The Cancellation of the Umbrella policy was requested by Auto-Owners.

37.

Notice of the Cancellation of the Umbrella policy was sent to Marietta Motorsports on February 7, 2014.

38.

The "Georgia Policy Cancellation and Nonrenewal Endorsement" accompanying the Umbrella policy, controls when that policy is determined to be effectively canceled, based upon the date of the request and whether the insured or insurer are making said request.

39.

On October 30, 2015, Auto-Owners sent a written offer of $1,000,000.00 to Plaintiffs for settlement of all claims arising out of the March 9, 2014, incident.

40.

With the written offer of October 30, 2015, Auto-Owners indicated that the $1,000,000.00 was the applicable limits of insurance for the March 9, 2014, incident.

41.

With the written offer of October 30, 2015, Auto-Owners indicated the Umbrella policy "was clearly canceled effective January 31, 2014."

42.

At the time Auto-Owners extended the $1,000,000.00 offer, Auto-Owners knew the Umbrella policy was still in effect and providing coverage as of March 9, 2014.

43.

At the time of the settlement offer, Auto-Owners intentionally misrepresented the Cancellation of the Umbrella policy.

44.

At the time of the settlement offer, Auto-Owners intentionally misrepresented the amount of available insurance limits for the March 9, 2014 incident.

45.

As part of the settlement of the March 9, 2014, incident, Francina Swinton signed an Affidavit of Insurance, attesting to the policies provided by Auto-Owners to Marietta Motorsports, and the available insurance limits afforded.

46.

At the time of signing the Affidavit of Insurance, Francina Swinton was an underwriting manager acting on behalf of Auto-Owners.

47.

Auto-Owners made edits and/or revisions to the Affidavit of Insurance indicating and affirming that the Umbrella policy, was effectively canceled on January 31, 2014 and did not provide coverage for the loss.

48.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy had not been canceled effective January 31, 2014.

49.

At the time Francina Swinton signed the Affidavit of Insurance, Auto-Owners knew the Umbrella policy had not been canceled effective January 31, 2014.

50.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy was in effect on March 9, 2014.

51.

At the time Francina Swinton signed the Affidavit of Insurance, Auto-Owners knew the Umbrella policy was in effect on March 9, 2014.

52.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy provided an additional $1,000,000.00 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

53.

At the time Francina Swinton signed the Affidavit of Insurance, Auto-Owners knew the Umbrella policy provided an additional $1,000,000.00 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

54.

Francina Swinton misrepresented that the Cancellation request was signed by the Marietta Motorsports.

55.

Auto-Owners misrepresented that the Cancellation request was signed by the Marietta Motorsports.

56.

Francina Swinton misrepresented that the Cancellation request was effective on January 31, 2014.

57.

Auto-Owners misrepresented that the Cancellation request was effective on January 31, 2014.

58.

Francina Swinton misrepresented the amount of available insurance limits for the March 9, 2014 incident.

59.

Auto-Owners misrepresented the amount of available insurance limits for the March 9, 2014 incident.

60.

Francina Swinton made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

61.

Auto-Owners made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

62.

Francina  Swinton  made  false  statements  and  misrepresentations  which  were

communicated to Plaintiffs via electronic mail and telephone.

63.

Auto-Owners made false statements and misrepresentations which were communicated to

Plaintiffs via electronic mail and telephone.

This 3rd day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

ANDREW B. CASH
Georgia Bar No: 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bulloch Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

12

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

2017 MAR -6  AM 10: 32

RICHARD ALEXANDER, CLERK

JOHN W. STOREY and SUZANNE L. STOREY, )
as the Surviving Parents of JOHN JARED )
STOREY and as Administrators of the ESTATE of )
JOHN JARED STOREY, )
                                      )
      Plaintiffs, )
                                      )
v.                                       )
                                      )
OWNERS INSURANCE COMPANY, )
AUTO-OWNERS INSURANCE COMPANY, and )
FRANCINA SWINTON, )
                                      )
      Defendants. )

Civil Action No.

**7 C  01208 -6**

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS OWNERS INSURANCE COMPANY AND AUTO-OWNERS INSURANCE COMPANY

COME NOW, Plaintiffs by and through their attorneys and serves these Requests for Production of Documents upon Defendants Owner Insurance Company ("Defendant" or "Owners") and Auto-Owners Insurance Company ("Defendant" or "Auto-Owners") and requests that they be fully answered in writing and under oath within forty-five (45) days of the date of service. These requests are served pursuant to the Georgia Civil Practice Act and more specifically to the provisions of O.C.G.A. §§ 9-11-26 and 9-11-34. Each request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of the Defendant's attorneys, investigators, agents, employees and other representatives. If Defendant is unable to comply with a Request completely, the Request should be produced as fully as possible. These Requests should be deemed continuing, and you are under a duty to reasonably supplement or amend a prior response.

## INSTRUCTIONS

1. You must exercise due diligence to secure full information to answer these requests. After exercising due diligence, if you still cannot answer in full, answer to the extent possible, specify your inability to answer the remainder, state whatever information or knowledge you have concerning the unanswered portion, and detail what you did in attempting to secure the unknown information.

2. In the event you withhold information or documents responsive to these discovery requests that you contend is privileged, subject to protection as trial preparation material or otherwise protected from discovery, please provide a "Privilege Log." A privilege log is a document identifying and describing communications or documents that are not produced or disclosed in discovery based upon the assertion that the communication or document is privileged, subject to protection as trial preparation material or otherwise protected from discovery that will enable other parties and/or the Court to assess such claim without revealing information itself privileged or protected. A privilege log should include, at a minimum, the following information: (a) the author and all recipients of the documents or communications; (b) the date the documents or communications were made; (c) the general subject matter of the documents or communications; (d) the factual basis for the privilege or protection asserted; and (f) whether the documents, communications, or tangible things have previously ever been produced or made available to the public. Note: It is not necessarily to include communications or documents on a privilege log that are exclusively between: (a) a defendant and their attorney; or (b) a defendant and their insurance company.

2

3.  All items of tangible evidence requested for production shall be produced for the Plaintiffs' inspection and copying as provided by law.  The production shall take place at the office of Cash, Krugler, & Fredericks, 5447 Roswell Road, Atlanta, Georgia 30342.

4.  These requests are deemed to be continuing in accordance with the Georgia Civil Practice Act requiring timely supplementation.

<u>DEFINITIONS</u>

As used herein, the terms listed below are defined as follows:

1.  "**Identify**" when used with respect to an individual, means that the answering party is required to state the name, employer, last known business address, residence addresses and telephone numbers of the individual.

2.  "**Identify**" when used with respect to a business, means that the answering party is required to state the full name, address, and telephone number of the business.

3.  "**Identify**" when used with respect to a "document" means that the answering party is required to state with respect to each such document: (1) the title or other means of identification; (2) the date; (3) the author, including his or her name, address, telephone number and employer; (4) the recipient, including his or her name, address, telephone number, employer and date of receipt; (5) the names, addresses and telephone numbers of any and all persons who have custody or control of the document; and (6) the present location of the document.

4.  "**Document**(s)" is intended to include the original and all non-identical copies of any record by which information has been recorded or from which information can be obtained, in the actual or constructive possession, custody, care, or control of Defendant, their agents, attorneys, or any other person affiliated with Defendant.  The form of such documents includes, but is not limited to, letters, telegrams, pictures, books, papers, memoranda, reports, minutes,

3

contracts, notes, studies, print-outs, calendars, diaries, work papers, checks, logs, ledgers, payrolls, licenses, tax records, purchase orders, invoices, receipts, microfilm, microfiche, punch cards, magnetic tapes, disks, press releases, news publications, video tapes, tape recordings, depositions and answers to interrogatories. The word document also includes all electronic and computerized data, documents or information, regardless of whether it has been printed in hard copy.

5. "**Person**(s)" includes, but is not limited to, all individuals, associations, companies, partnerships, joint ventures, corporations, and local, municipal, county, state and federal government agencies.

6. "**You**," "**your**" or "**Defendant**" means the defendant upon whom these requests have been served, their attorneys, adjusters, agents and employees.

7. "**Marietta Motorsports,**" "**Insured,**" or "**your insured**" means Marietta Motor Sports, Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

8. "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

4

9. **"Umbrella policy"** means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

10. **"Cancellation"** means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

11. **"Settlement Release"** means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

12. **"Affidavit of Insurance"** or **"Affidavit"** means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## REQUESTS

1.

All documents which would identify the individuals and employees, including but not limited to all management and regional employees, who assisted with handling, investigating, analyzing, and adjusting the claims asserted by Plaintiffs as a result of the March 9, 2014, incident, the injuries suffered by John Jared Storey, and all matters identified within your system as Claim/File No. 87-953-2014.

2.

A complete and accurate copy of the entire claims file for Claim/File No. 87-953-2014, for the underlying incident, including but not limited to all documents, reports, reserves, summaries, notes, communications, correspondence, emails, photographs, and recordings.

3.

All documents regarding any investigation undertaken by you or on your behalf concerning the March 9, 2014 incident.

4.

All documents in any way referencing or related to any exposure/reserves analysis and/or insurance coverage opinions concerning the March 9, 2014 incident.

5.

All documents, including employee handbooks, policy or procedure manuals, videos (online or otherwise), PowerPoint or similar presentations, or other training and reference materials regarding handling, adjusting, and processing claims, including but not limited to those that apply to investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages.  This includes any and all policy and procedure manuals of any nature related to claims handling and underwriting.

6.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your response to the letter from Cash Krugler & Fredericks, dated November 14, 2014, requesting identification of all insurance policies that might provide coverage for said incident pursuant to O.C.G.A. § 33-3-28(a).

7.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your decision to withhold disclosing the Umbrella policy when responding to the November 14, 2014, request for

insurance policies that might provide coverage for the underlying incident pursuant to O.C.G.A. § 33-3-28(a).

8.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your decision that "there is no coverage under the policy to pay your claim" as reflected in the letter from Ms. Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

9.

All documents supporting your contention that "there is no coverage under the policy to pay your claim" as reflected in the letter from Ms. Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

10.

All documents generated in conjunction with and as a result of the "investigation" as referenced in defendants' letter of December 16, 2014, concerning Claim/File No. 87-953-2014, wherein defendants indicated "Our investigation there is no coverage under the policy to pay your claim."

11.

All applications, cancellations, and other documents associated with any insurance policy issued or maintained by you and providing coverage to Marietta Motorsports.

12.

For the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), produce all receipts, invoices, cleared

payment records, and documents that show or reference the last six (6) months of premiums paid for each policy.

13.

For the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), produce all receipts, invoices, cleared payment records, and documents that show or reference any reimbursement and/or refund of premiums paid for each policy.

14.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Paul Wright and/or Marietta Motorsports concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

15.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Michael McRae and/or McRae, Stegall, Peek, Harman, Smith & Monroe, LLP, concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

16.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Michael Kendall and/or Kendall Law Group,

8

LLC, concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

17.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Cord & Wilburn, Inc., concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

18.

All documents supporting any contention that the Umbrella policy was canceled effective January 31, 2014, and did not provide coverage for the March 9, 2014, incident.

19.

All documents supporting any contention that the Cancellation was requested by Marietta Motorsports.

20.

All documents supporting any contention that the Cancellation was signed by Marietta Motorsports.

21.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession analyzing, discussing or addressing in any way the disclosure of the Umbrella policy to Plaintiffs.

22.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the Cancellation of the Umbrella policy.

23.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession analyzing, discussing or addressing in any way the February 7, 2014 letter to Marietta Motorsports regarding the cancellation of the Umbrella policy.

24.

All correspondence, emails, memos, minutes of meetings, reports or documents in your possession referencing, discussing or addressing in any way the October 30, 2015 offer of $1,000,000.00 to settle the underlying incident, and the language and content of the letter extending said offer.

25.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the language, edits, revisions and/or content of the Affidavit of Insurance.

26.

Please produce all drafts of the Affidavit of Insurance signed by Francina Swinton.

27.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the language, edits, revisions and/or content of the Settlement Release.

28.

All statements, reports, communications or other documents in your possession obtained from any party, witness or individual with knowledge or information concerning any issue in this case, whether such knowledge or information relates to the Plaintiffs' claims, your defenses, the credibility of any witness, or any other issue in this case.

29.

All complaints, answers, discovery, deposition transcripts or other pleadings or documents from claims asserted or lawsuits filed against you, within the last ten (10) years, where it was claimed or alleged that you participated in a scheme to wrongfully deny, misrepresent or refuse insurance benefits. This request includes copies of any settlement agreements from any such case.

30.

Identify and produce every document which mentions, discusses, or refers to the Umbrella policy and/or the Cancellation request.

31.

A copy of your document retention/destruction policies in force and effect at any time from January 2012 through the present. [Including but not limited to any such policies applicable to claims files.]

32.

All documents that you contend support any of the affirmative defenses asserted by you in your answer.

33.

Any other "document" in your possession not otherwise requested herein regarding the Umbrella policy, the Affidavit of Insurance, the Cancellation, and the Settlement Release as defined in the definitions above.

This __3rd__ day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bullock Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

FILED IN OFFICE
CLERK STATE COURT

## IN THE STATE COURT OF GWINNETT COUNTY, GA
## STATE OF GEORGIA

2017 MAR -6  AM 10: 32

RICHARD ALEXANDER. CLERK

JOHN W. STOREY and SUZANNE L. STOREY, )
as the Surviving Parents of JOHN JARED )
STOREY and as Administrators of the ESTATE of )
JOHN JARED STOREY, )
)
     Plaintiffs, )
)
v. )
)
OWNERS INSURANCE COMPANY, )
AUTO-OWNERS INSURANCE COMPANY, and )
FRANCINA SWINTON, )
)
     Defendants. )

Civil Action No.

## PLAINTIFFS' FIRST CONTINUING INTERROGATORIES TO DEFENDANTS OWNERS INSURANCE COMPANY AND AUTO-OWNERS INSURANCE COMPANY

COME NOW, Plaintiffs by and through their attorneys, and serve these interrogatories upon Defendants Owner Insurance Company ("Defendant" or "Owners") and Auto-Owners Insurance Company ("Defendant" or "Auto-Owners") and requests that they be fully answered in writing and under oath within forty-five (45) days of the date of service. These interrogatories are served pursuant to the Georgia Civil Practice Act and more specifically to the provisions of O.C.G.A. §§ 9-11-26 and 9-11-33. These interrogatories shall be deemed continuing and you are required to supplement or amend any prior response if the person or entity to whom these interrogatories are addressed ascertains any change, different or added fact, condition or circumstances, or there be any other witness(es) or evidence. Each interrogatory is addressed to the personal knowledge of Defendant, as well as the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. If Defendant is unable to

answer a question when a question is directed to Defendant, the question is also directed to all of the aforementioned persons.

Defendant is requested not to respond to interrogatories by referring to the response to other interrogatories or by adoption, since some of the interrogatories may be introduced into evidence and should be, for this purpose, complete in themselves.

## INSTRUCTIONS

1. You must exercise due diligence to secure full information to answer these interrogatories. After exercising due diligence, if you still cannot answer in full, answer to the extent possible, specify your inability to answer the remainder, state whatever information or knowledge you have concerning the unanswered portion, and detail what you did in attempting to secure the unknown information.

2. In the event you withhold information or documents responsive to these discovery requests that you contend is privileged, subject to protection as trial preparation material or otherwise protected from discovery, please provide a "Privilege Log." A privilege log is a document identifying and describing communications or documents that are not produced or disclosed in discovery based upon the assertion that the communication or document is privileged, subject to protection as trial preparation material or otherwise protected from discovery that will enable other parties and/or the Court to assess such claim without revealing information itself privileged or protected. A privilege log should include, at a minimum, the following information: (a) the author and all recipients of the documents or communications; (b) the date the documents or communications were made; (c) the general subject matter of the documents or communications; (d) the factual basis for the privilege or protection asserted; and (f) whether the documents, communications, or tangible things have previously ever been

produced or made available to the public. Note: It is not necessarily to include communications or documents on a privilege log that are exclusively between: (a) a defendant and their attorney; or (b) a defendant and their insurance company.

3. These interrogatories are deemed to be continuing in accordance with the Georgia Civil Practice Act requiring timely supplementation.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. "**Identify**" when used with respect to an individual, means that the answering party is required to state the name, employer, last known business address, residence addresses and telephone numbers of the individual.

2. "**Identify**" when used with respect to a business, means that the answering party is required to state the full name, address, and telephone number of the business.

3. "**Identify**" when used with respect to a "document" means that the answering party is required to state with respect to each such document: (1) the title or other means of identification; (2) the date; (3) the author, including his or her name, address, telephone number and employer; (4) the recipient, including his or her name, address, telephone number, employer and date of receipt; (5) the names, addresses and telephone numbers of any and all persons who have custody or control of the document; and (6) the present location of the document.

4. "**Document**(s)" is intended to include the original and all non-identical copies of any record by which information has been recorded or from which information can be obtained, in the actual or constructive possession, custody, care, or control of Defendant, their agents, attorneys, or any other person affiliated with Defendant. The form of such documents includes, but is not limited to, letters, telegrams, pictures, books, papers, memoranda, reports, minutes,

3

contracts, notes, studies, print-outs, calendars, diaries, work papers, checks, logs, ledgers, payrolls, licenses, tax records, purchase orders, invoices, receipts, microfilm, microfiche, punch cards, magnetic tapes, disks, press releases, news publications, video tapes, tape recordings, depositions and answers to interrogatories.  The word document also includes all electronic and computerized data, documents or information, regardless of whether it has been printed in hard copy.

5.  "**Person**(s)" includes, but is not limited to, all individuals, associations, companies, partnerships, joint ventures, corporations, and local, municipal, county, state and federal government agencies.

6.  "**You**," "**your**" or "**Defendant**" means the defendant upon whom these requests have been served, their attorneys, adjusters, agents and employees.

7.  "**Marietta Motorsports,**" "**Insured,**" or "**your insured**" means Marietta Motor Sports, Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners").  Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

8.  "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

9. "**Umbrella policy**" means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

10. "**Cancellation**" means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

11. "**Settlement Release**" means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

12. "**Affidavit of Insurance**" or "**Affidavit**" means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## INTERROGATORIES

### 1.

Please identify each individual who provided information or participated in preparing the answers to these interrogatories (excluding your counsel of record and their staff).

### 2.

Please describe in detail the relationships between the defendants in this action.

### 3.

Please identify each individual and employee, including, but not limited to, all management and regional employees, who assisted with investigating, analyzing, adjusting and responding to the claims asserted by Plaintiffs as a result of the March 9, 2014, incident, the injuries suffered

by John Jared Storey, and all matters identified within your system as Claim/File No. 87-953-2014.

4.

Please indicate when and how you first learned of the March 9, 2014 incident and identify those individuals who participated and/or were responsible for setting up Claim/File No. 87-953-2014 and the steps taken.

5.

Please describe each investigation into the March 9, 2014 incident that was conducted by you or on your behalf, stating, for each: the date, the person or entity conducting it, the results and/or conclusions reached, and identify any reports that were generated as a result.

6.

Please identify each individual who assisted and/or was responsible for responding to the letter from Cash Krugler & Fredericks, dated November 14, 2014, requesting identification of all insurance policies that might provide coverage for said incident pursuant to O.C.G.A. § 33-3-28(a).

7.

Please identify each individual who assisted and/or was responsible for the decision to withhold information concerning the existence of the Umbrella policy when responding to Plaintiffs' request for information concerning all insurance policies that might provide coverage for pursuant to O.C.G.A. § 33-3-28(a), and provide each fact and/or basis for this decision.

8.

Please identify each individual who assisted and/or was responsible for defendants' position that "there is no coverage under the policy to pay your claim" as reflected in the letter from Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

9.

Please identify each and every fact, document, and/or basis for defendants' position that "there is no coverage under the policy to pay your claim," as reflected in the letter from Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

10.

Please identify each individual and employee, including, but not limited to, all management and regional employees, who assisted and/or were responsible for the "investigation" as referenced in defendants' letter of December 16, 2014, concerning Claim/File No. 87-953-2014, wherein defendants indicated "Our investigation there is no coverage under the policy to pay your claim" and outline the steps taken in such investigation, as well as the findings reached and any and all reports generated as a result.

11.

Identify the following information for the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), providing for each:

a)  Original policy effective dates and policy period;

b)  The effective dates and policy period for any renewal policies;

c) The amounts paid monthly for premiums, including any changes to premium amount and date of any such change;

d) The effective dates of any cancellations and identify by whom the cancellation was made and requested; and

e) The dates of the last six (6) premiums paid.

12.

Please identify each individual who was involved and/or assisted with the cancellation of the Umbrella policy, including all individuals who requested, signed, received, processed, and/or issued notices concerning the cancellation.

13.

Please identify each individual that was involved in, assisted, and/or was responsible for investigating whether or not the Umbrella policy potentially provided coverage for the March 9, 2014, incident.

14.

Please identify each and every fact, document, reason and/or basis for your contention that the Umbrella policy was cancelled effective January 31, 2014.

15.

Please identify each and every fact, document, reason and/or basis for your contention that the Umbrella policy was cancelled by Marietta Motorsports.

16.

Do you contend the cancellation endorsement to the Umbrella policy outlines the terms for determining when cancellation of the policy becomes effective?  If your answer is "no," identify each and every fact upon which you rely in support of your contention.

17.

Please identify each individual that was involved in proposing and/or deciding upon the edits and language added to the Affidavit of Insurance signed by Francina Swinton.

18.

Please identify each individual that was involved in, assisted, and/or was responsible for the decision to extend the October 30, 2015, offer of $1,000,000 to settle the claims arising out of the March 9, 2014 incident, and provide each fact and/or basis for this decision.

19.

Please identify each individual that was involved in, assisted, and/or was responsible for the decision to send correspondence, both electronically and by U.S. mail, indicating that the Umbrella policy had been canceled by the insured effective January 31, 2014 and therefore did not provide coverage for the underlying incident, and provide each fact and/or basis for this decision.

20.

Please describe all training and education provided to your employees, agents, and adjusters regarding establishing and adjusting claims, including, but not limited to, investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages.

21.

Identify each and every rule, guideline, requirement, regulation, standard, policy, practice, and procedure you have in place for the past five (5) years, outlining how claims are to be handled, initiated, adjusted, and processed, including, but not limited to, those that apply to

investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages.

22.

Identify each and every policy and procedure you have in place for the past five (5) years, concerning the retention of documents and claims files, including, but not limited to, any and all information, documents, notes, electronic messages, reports, and correspondence contained therein.

23.

Please identify custodian and location of the claims file for Claim/File No. 87-953-2014, including, but not limited to, any and all reports, communications, information, correspondence, emails, summaries, notes, and voice messages. Please include in your answer a description of all third-party storage facilities, offices, files, databases, storage devices, computers and other individuals, entities or things which might have or store this information.

24.

Identify the type of email or message server you use for internal claims communications, and identify where messages are stored/backed-up and for how long those messages are maintained.

25.

Please identify every claim asserted or lawsuit filed against you in the last ten (10) years where it was claimed or alleged that you participated in a scheme to wrongfully deny, misrepresent or refuse insurance benefits. Please include in your response the names and addresses of all parties involved, the substance of each claim or suit, the court where each

lawsuit was filed, the attorney for the plaintiff or claimant (if applicable), the case number and the resolution of each claim or suit.

26.

Please identify each person who you know or believe may have knowledge or information concerning any issue in this case, whether such knowledge or information relates to the Plaintiffs' claims, your defenses, the credibility of any witness, or any other issue in this case.

27.

Identify each individual who may be called to testify at trial concerning any information relating to the subject matter of this action, or the claims or defenses of any party to this action and describe generally what discoverable matter or information each persons claims to know.

28.

If you have obtained any statements from any source relating to this action, for each statement:

(a)     identify the person who made it;

(b)     identify the person who obtained it;

(c)     state the date and time it was obtained;

(d)     state whether it was written, sound recorded or oral, and, if written or sound recorded, the name and address of the person who has custody of the statement; and

(e)     state the substance of each statement.

29.

Please identify any and all documentary or other tangible evidence, not previously identified or produced, which you believe demonstrates and/or supports facts relevant to the claims and/or defenses in this case.

30.

Please state the factual basis for each defense or denial raised in your Answer.

This _3rd_ day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

_A. B. C.l_

ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

_L. Vickery / by SEB_

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bullock Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

FILED IN OFFICE
CLERK STATE COURT

**IN THE STATE COURT OF GWINNETT COUNTY, GA**
**STATE OF GEORGIA**

2017 MAR -6  AM 10: 32

RICHARD ALEXANDER. CLERK

| | |
|---|---|
| JOHN W. STOREY and SUZANNE L. STOREY, )<br>as the Surviving Parents of JOHN JARED )<br>STOREY and as Administrators of the ESTATE of )<br>JOHN JARED STOREY, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>OWNERS INSURANCE COMPANY, )<br>AUTO-OWNERS INSURANCE COMPANY, and )<br>FRANCINA SWINTON, )<br>)<br>Defendants. ) | Civil Action No. |

## PLAINTIFFS' FIRST CONTINUING INTERROGATORIES TO DEFENDANTS
## OWNERS INSURANCE COMPANY AND AUTO-OWNERS INSURANCE COMPANY

COME NOW, Plaintiffs by and through their attorneys, and serve these interrogatories

upon Defendants Owner Insurance Company ("Defendant" or "Owners") and Auto-Owners

Insurance Company ("Defendant" or "Auto-Owners") and requests that they be fully answered in

writing and under oath within forty-five (45) days of the date of service. These interrogatories

are served pursuant to the Georgia Civil Practice Act and more specifically to the provisions of

O.C.G.A. §§ 9-11-26 and 9-11-33. These interrogatories shall be deemed continuing and you are

required to supplement or amend any prior response if the person or entity to whom these

interrogatories are addressed ascertains any change, different or added fact, condition or

circumstances, or there be any other witness(es) or evidence. Each interrogatory is addressed to

the personal knowledge of Defendant, as well as the knowledge and information of Defendant's

attorneys, investigators, agents, employees, and other representatives. If Defendant is unable to

answer a question when a question is directed to Defendant, the question is also directed to all of the aforementioned persons.

Defendant is requested not to respond to interrogatories by referring to the response to other interrogatories or by adoption, since some of the interrogatories may be introduced into evidence and should be, for this purpose, complete in themselves.

## INSTRUCTIONS

1. You must exercise due diligence to secure full information to answer these interrogatories. After exercising due diligence, if you still cannot answer in full, answer to the extent possible, specify your inability to answer the remainder, state whatever information or knowledge you have concerning the unanswered portion, and detail what you did in attempting to secure the unknown information.

2. In the event you withhold information or documents responsive to these discovery requests that you contend is privileged, subject to protection as trial preparation material or otherwise protected from discovery, please provide a "Privilege Log." A privilege log is a document identifying and describing communications or documents that are not produced or disclosed in discovery based upon the assertion that the communication or document is privileged, subject to protection as trial preparation material or otherwise protected from discovery that will enable other parties and/or the Court to assess such claim without revealing information itself privileged or protected. A privilege log should include, at a minimum, the following information: (a) the author and all recipients of the documents or communications; (b) the date the documents or communications were made; (c) the general subject matter of the documents or communications; (d) the factual basis for the privilege or protection asserted; and (f) whether the documents, communications, or tangible things have previously ever been

2

produced or made available to the public. <u>Note</u>: It is not necessarily to include communications or documents on a privilege log that are exclusively between: (a) a defendant and their attorney; or (b) a defendant and their insurance company.

3.   These interrogatories are deemed to be continuing in accordance with the Georgia Civil Practice Act requiring timely supplementation.

DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.   "**Identify**" when used with respect to an individual, means that the answering party is required to state the name, employer, last known business address, residence addresses and telephone numbers of the individual.

2.   "**Identify**" when used with respect to a business, means that the answering party is required to state the full name, address, and telephone number of the business.

3.   "**Identify**" when used with respect to a "document" means that the answering party is required to state with respect to each such document: (1) the title or other means of identification; (2) the date; (3) the author, including his or her name, address, telephone number and employer; (4) the recipient, including his or her name, address, telephone number, employer and date of receipt; (5) the names, addresses and telephone numbers of any and all persons who have custody or control of the document; and (6) the present location of the document.

4.   "**Document**(s)" is intended to include the original and all non-identical copies of any record by which information has been recorded or from which information can be obtained, in the actual or constructive possession, custody, care, or control of Defendant, their agents, attorneys, or any other person affiliated with Defendant.  The form of such documents includes, but is not limited to, letters, telegrams, pictures, books, papers, memoranda, reports, minutes,

3

contracts, notes, studies, print-outs, calendars, diaries, work papers, checks, logs, ledgers, payrolls, licenses, tax records, purchase orders, invoices, receipts, microfilm, microfiche, punch cards, magnetic tapes, disks, press releases, news publications, video tapes, tape recordings, depositions and answers to interrogatories. The word document also includes all electronic and computerized data, documents or information, regardless of whether it has been printed in hard copy.

5. "**Person**(s)" includes, but is not limited to, all individuals, associations, companies, partnerships, joint ventures, corporations, and local, municipal, county, state and federal government agencies.

6. "**You**," "**your**" or "**Defendant**" means the defendant upon whom these requests have been served, their attorneys, adjusters, agents and employees.

7. "**Marietta Motorsports**," "**Insured**," or "**your insured**" means Marietta Motor Sports, Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

8. "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

9. "**Umbrella policy**" means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

10. "**Cancellation**" means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

11. "**Settlement Release**" means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

12. "**Affidavit of Insurance**" or "**Affidavit**" means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## INTERROGATORIES

### 1.

Please identify each individual who provided information or participated in preparing the answers to these interrogatories (excluding your counsel of record and their staff).

### 2.

Please describe in detail the relationships between the defendants in this action.

### 3.

Please identify each individual and employee, including, but not limited to, all management and regional employees, who assisted with investigating, analyzing, adjusting and responding to the claims asserted by Plaintiffs as a result of the March 9, 2014, incident, the injuries suffered

by John Jared Storey, and all matters identified within your system as Claim/File No. 87-953-2014.

4.

Please indicate when and how you first learned of the March 9, 2014 incident and identify those individuals who participated and/or were responsible for setting up Claim/File No. 87-953-2014 and the steps taken.

5.

Please describe each investigation into the March 9, 2014 incident that was conducted by you or on your behalf, stating, for each: the date, the person or entity conducting it, the results and/or conclusions reached, and identify any reports that were generated as a result.

6.

Please identify each individual who assisted and/or was responsible for responding to the letter from Cash Krugler & Fredericks, dated November 14, 2014, requesting identification of all insurance policies that might provide coverage for said incident pursuant to O.C.G.A. § 33-3-28(a).

7.

Please identify each individual who assisted and/or was responsible for the decision to withhold information concerning the existence of the Umbrella policy when responding to Plaintiffs' request for information concerning all insurance policies that might provide coverage for pursuant to O.C.G.A. § 33-3-28(a), and provide each fact and/or basis for this decision.

8.

Please identify each individual who assisted and/or was responsible for defendants' position that "there is no coverage under the policy to pay your claim" as reflected in the letter from Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

9.

Please identify each and every fact, document, and/or basis for defendants' position that "there is no coverage under the policy to pay your claim," as reflected in the letter from Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

10.

Please identify each individual and employee, including, but not limited to, all management and regional employees, who assisted and/or were responsible for the "investigation" as referenced in defendants' letter of December 16, 2014, concerning Claim/File No. 87-953-2014, wherein defendants indicated "Our investigation there is no coverage under the policy to pay your claim" and outline the steps taken in such investigation, as well as the findings reached and any and all reports generated as a result.

11.

Identify the following information for the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), providing for each:

a) Original policy effective dates and policy period;

b) The effective dates and policy period for any renewal policies;

7

c) The amounts paid monthly for premiums, including any changes to premium amount and date of any such change;

d) The effective dates of any cancellations and identify by whom the cancellation was made and requested; and

e) The dates of the last six (6) premiums paid.

12.

Please identify each individual who was involved and/or assisted with the cancellation of the Umbrella policy, including all individuals who requested, signed, received, processed, and/or issued notices concerning the cancellation.

13.

Please identify each individual that was involved in, assisted, and/or was responsible for investigating whether or not the Umbrella policy potentially provided coverage for the March 9, 2014, incident.

14.

Please identify each and every fact, document, reason and/or basis for your contention that the Umbrella policy was cancelled effective January 31, 2014.

15.

Please identify each and every fact, document, reason and/or basis for your contention that the Umbrella policy was cancelled by Marietta Motorsports.

16.

Do you contend the cancellation endorsement to the Umbrella policy outlines the terms for determining when cancellation of the policy becomes effective?  If your answer is "no," identify each and every fact upon which you rely in support of your contention.

8

17.

Please identify each individual that was involved in proposing and/or deciding upon the edits and language added to the Affidavit of Insurance signed by Francina Swinton.

18.

Please identify each individual that was involved in, assisted, and/or was responsible for the decision to extend the October 30, 2015, offer of $1,000,000 to settle the claims arising out of the March 9, 2014 incident, and provide each fact and/or basis for this decision.

19.

Please identify each individual that was involved in, assisted, and/or was responsible for the decision to send correspondence, both electronically and by U.S. mail, indicating that the Umbrella policy had been canceled by the insured effective January 31, 2014 and therefore did not provide coverage for the underlying incident, and provide each fact and/or basis for this decision.

20.

Please describe all training and education provided to your employees, agents, and adjusters regarding establishing and adjusting claims, including, but not limited to, investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages.

21.

Identify each and every rule, guideline, requirement, regulation, standard, policy, practice, and procedure you have in place for the past five (5) years, outlining how claims are to be handled, initiated, adjusted, and processed, including, but not limited to, those that apply to

investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages.

22.

Identify each and every policy and procedure you have in place for the past five (5) years, concerning the retention of documents and claims files, including, but not limited to, any and all information, documents, notes, electronic messages, reports, and correspondence contained therein.

23.

Please identify custodian and location of the claims file for Claim/File No. 87-953-2014, including, but not limited to, any and all reports, communications, information, correspondence, emails, summaries, notes, and voice messages. Please include in your answer a description of all third-party storage facilities, offices, files, databases, storage devices, computers and other individuals, entities or things which might have or store this information.

24.

Identify the type of email or message server you use for internal claims communications, and identify where messages are stored/backed-up and for how long those messages are maintained.

25.

Please identify every claim asserted or lawsuit filed against you in the last ten (10) years where it was claimed or alleged that you participated in a scheme to wrongfully deny, misrepresent or refuse insurance benefits. Please include in your response the names and addresses of all parties involved, the substance of each claim or suit, the court where each

lawsuit was filed, the attorney for the plaintiff or claimant (if applicable), the case number and the resolution of each claim or suit.

26.

Please identify each person who you know or believe may have knowledge or information concerning any issue in this case, whether such knowledge or information relates to the Plaintiffs' claims, your defenses, the credibility of any witness, or any other issue in this case.

27.

Identify each individual who may be called to testify at trial concerning any information relating to the subject matter of this action, or the claims or defenses of any party to this action and describe generally what discoverable matter or information each persons claims to know.

28.

If you have obtained any statements from any source relating to this action, for each statement:

    (a)    identify the person who made it;

    (b)    identify the person who obtained it;

    (c)    state the date and time it was obtained;

    (d)    state whether it was written, sound recorded or oral, and, if written or sound recorded, the name and address of the person who has custody of the statement; and

    (e)    state the substance of each statement.

11

29.

Please identify any and all documentary or other tangible evidence, not previously identified or produced, which you believe demonstrates and/or supports facts relevant to the claims and/or defenses in this case.

30.

Please state the factual basis for each defense or denial raised in your Answer.

This __3rd__ day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

_____

ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

_____

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bullock Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

12

FILED IN OFFICE
CLERK STATE COURT
**IN THE STATE COURT OF GWINNETT COUNTY** COUNTY, GA
**STATE OF GEORGIA**

2017 MAR -6  AM 10: 32

| | |
|---|---|
| JOHN W. STOREY and SUZANNE L. STOREY, ) | RICHARD ALEXANDER, CLERK |
| as the Surviving Parents of JOHN JARED ) | |
| STOREY and as Administrators of the ESTATE of ) | **17 C 01208 -6** |
| JOHN JARED STOREY, ) | |
|  ) | |
| Plaintiffs, ) | Civil Action No. |
|  ) | |
| v. ) | |
|  ) | |
| OWNERS INSURANCE COMPANY, ) | |
| AUTO-OWNERS INSURANCE COMPANY, and ) | |
| FRANCINA SWINTON, ) | |
|  ) | |
| Defendants. ) | |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS OWNERS INSURANCE COMPANY AND AUTO-OWNERS INSURANCE COMPANY

COME NOW, Plaintiffs by and through their attorneys and serves these Requests for Production of Documents upon Defendants Owner Insurance Company ("Defendant" or "Owners") and Auto-Owners Insurance Company ("Defendant" or "Auto-Owners") and requests that they be fully answered in writing and under oath within forty-five (45) days of the date of service. These requests are served pursuant to the Georgia Civil Practice Act and more specifically to the provisions of O.C.G.A. §§ 9-11-26 and 9-11-34. Each request is addressed to the personal knowledge of the Defendant, as well as to the knowledge and information of the Defendant's attorneys, investigators, agents, employees and other representatives. If Defendant is unable to comply with a Request completely, the Request should be produced as fully as possible. These Requests should be deemed continuing, and you are under a duty to reasonably supplement or amend a prior response.

## INSTRUCTIONS

1.  You must exercise due diligence to secure full information to answer these requests. After exercising due diligence, if you still cannot answer in full, answer to the extent possible, specify your inability to answer the remainder, state whatever information or knowledge you have concerning the unanswered portion, and detail what you did in attempting to secure the unknown information.

2.  In the event you withhold information or documents responsive to these discovery requests that you contend is privileged, subject to protection as trial preparation material or otherwise protected from discovery, please provide a "Privilege Log." A privilege log is a document identifying and describing communications or documents that are not produced or disclosed in discovery based upon the assertion that the communication or document is privileged, subject to protection as trial preparation material or otherwise protected from discovery that will enable other parties and/or the Court to assess such claim without revealing information itself privileged or protected. A privilege log should include, at a minimum, the following information: (a) the author and all recipients of the documents or communications;  (b) the date the documents or communications were made; (c) the general subject matter of the documents or communications; (d) the factual basis for the privilege or protection asserted; and (f) whether the documents, communications, or tangible things have previously ever been produced or made available to the public. Note: It is not necessarily to include communications or documents on a privilege log that are exclusively between: (a) a defendant and their attorney; or (b) a defendant and their insurance company.

3.   All items of tangible evidence requested for production shall be produced for the Plaintiffs' inspection and copying as provided by law.  The production shall take place at the office of Cash, Krugler, & Fredericks, 5447 Roswell Road, Atlanta, Georgia 30342.

4.   These requests are deemed to be continuing in accordance with the Georgia Civil Practice Act requiring timely supplementation.

DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.   "**Identify**" when used with respect to an individual, means that the answering party is required to state the name, employer, last known business address, residence addresses and telephone numbers of the individual.

2.   "**Identify**" when used with respect to a business, means that the answering party is required to state the full name, address, and telephone number of the business.

3.   "**Identify**" when used with respect to a "document" means that the answering party is required to state with respect to each such document: (1) the title or other means of identification; (2) the date; (3) the author, including his or her name, address, telephone number and employer; (4) the recipient, including his or her name, address, telephone number, employer and date of receipt; (5) the names, addresses and telephone numbers of any and all persons who have custody or control of the document; and (6) the present location of the document.

4.   "**Document**(s)" is intended to include the original and all non-identical copies of any record by which information has been recorded or from which information can be obtained, in the actual or constructive possession, custody, care, or control of Defendant, their agents, attorneys, or any other person affiliated with Defendant.  The form of such documents includes, but is not limited to, letters, telegrams, pictures, books, papers, memoranda, reports, minutes,

contracts, notes, studies, print-outs, calendars, diaries, work papers, checks, logs, ledgers, payrolls, licenses, tax records, purchase orders, invoices, receipts, microfilm, microfiche, punch cards, magnetic tapes, disks, press releases, news publications, video tapes, tape recordings, depositions and answers to interrogatories. The word document also includes all electronic and computerized data, documents or information, regardless of whether it has been printed in hard copy.

5. "**Person**(s)" includes, but is not limited to, all individuals, associations, companies, partnerships, joint ventures, corporations, and local, municipal, county, state and federal government agencies.

6. "**You**," "**your**" or "**Defendant**" means the defendant upon whom these requests have been served, their attorneys, adjusters, agents and employees.

7. "**Marietta Motorsports**," "**Insured**," or "**your insured**" means Marietta Motor Sports, Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

8. "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

9. "**Umbrella policy**" means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

10. "**Cancellation**" means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

11. "**Settlement Release**" means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

12. "**Affidavit of Insurance**" or "**Affidavit**" means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## REQUESTS

1.

All documents which would identify the individuals and employees, including but not limited to all management and regional employees, who assisted with handling, investigating, analyzing, and adjusting the claims asserted by Plaintiffs as a result of the March 9, 2014, incident, the injuries suffered by John Jared Storey, and all matters identified within your system as Claim/File No. 87-953-2014.

2.

A complete and accurate copy of the entire claims file for Claim/File No. 87-953-2014, for the underlying incident, including but not limited to all documents, reports, reserves, summaries, notes, communications, correspondence, emails, photographs, and recordings.

3.

All documents regarding any investigation undertaken by you or on your behalf concerning the March 9, 2014 incident.

4.

All documents in any way referencing or related to any exposure/reserves analysis and/or insurance coverage opinions concerning the March 9, 2014 incident.

5.

All documents, including employee handbooks, policy or procedure manuals, videos (online or otherwise), PowerPoint or similar presentations, or other training and reference materials regarding handling, adjusting, and processing claims, including but not limited to those that apply to investigating the underlying incident, establishing reserves, and investigating, determining and communicating potential coverages. This includes any and all policy and procedure manuals of any nature related to claims handling and underwriting.

6.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your response to the letter from Cash Krugler & Fredericks, dated November 14, 2014, requesting identification of all insurance policies that might provide coverage for said incident pursuant to O.C.G.A. § 33-3-28(a).

7.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your decision to withhold disclosing the Umbrella policy when responding to the November 14, 2014, request for

insurance policies that might provide coverage for the underlying incident pursuant to O.C.G.A. § 33-3-28(a).

8.

All correspondence, communications, emails, memos, minutes of meetings, reports or documents in your possession analyzing, discussing or addressing in any way your decision that "there is no coverage under the policy to pay your claim" as reflected in the letter from Ms. Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

9.

All documents supporting your contention that "there is no coverage under the policy to pay your claim" as reflected in the letter from Ms. Liza Hendrix, dated December 16, 2014, concerning Claim/File No. 87-953-2014.

10.

All documents generated in conjunction with and as a result of the "investigation" as referenced in defendants' letter of December 16, 2014, concerning Claim/File No. 87-953-2014, wherein defendants indicated "Our investigation there is no coverage under the policy to pay your claim."

11.

All applications, cancellations, and other documents associated with any insurance policy issued or maintained by you and providing coverage to Marietta Motorsports.

12.

For the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), produce all receipts, invoices, cleared

payment records, and documents that show or reference the last six (6) months of premiums paid for each policy.

13.

For the policies of insurance issued to Marietta Motorsports by Owners Insurance Company including: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 43-737-118-04 ("Umbrella"), produce all receipts, invoices, cleared payment records, and documents that show or reference any reimbursement and/or refund of premiums paid for each policy.

14.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Paul Wright and/or Marietta Motorsports concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

15.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Michael McRae and/or McRae, Stegall, Peek, Harman, Smith & Monroe, LLP, concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

16.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Michael Kendall and/or Kendall Law Group,

LLC, concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

17.

Produce copies of all correspondence, facsimiles, communications, emails, and/or messages of any kind, sent to or received from Cord & Wilburn, Inc., concerning the March 9, 2014, incident, the Settlement and Affidavit of Insurance, the insurance policies issued to Marietta Motorsports (Umbrella, CGL, and Garage), and/or the Cancellation request.

18.

All documents supporting any contention that the Umbrella policy was canceled effective January 31, 2014, and did not provide coverage for the March 9, 2014, incident.

19.

All documents supporting any contention that the Cancellation was requested by Marietta Motorsports.

20.

All documents supporting any contention that the Cancellation was signed by Marietta Motorsports.

21.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession analyzing, discussing or addressing in any way the disclosure of the Umbrella policy to Plaintiffs.

22.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the Cancellation of the Umbrella policy.

23.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession analyzing, discussing or addressing in any way the February 7, 2014 letter to Marietta Motorsports regarding the cancellation of the Umbrella policy.

24.

All correspondence, emails, memos, minutes of meetings, reports or documents in your possession referencing, discussing or addressing in any way the October 30, 2015 offer of $1,000,000.00 to settle the underlying incident, and the language and content of the letter extending said offer.

25.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the language, edits, revisions and/or content of the Affidavit of Insurance.

26.

Please produce all drafts of the Affidavit of Insurance signed by Francina Swinton.

27.

All correspondence, emails, memos, minutes of meetings, reports or similar documents in your possession referencing, discussing or addressing in any way the language, edits, revisions and/or content of the Settlement Release.

28.

All statements, reports, communications or other documents in your possession obtained from any party, witness or individual with knowledge or information concerning any issue in this case, whether such knowledge or information relates to the Plaintiffs' claims, your defenses, the credibility of any witness, or any other issue in this case.

29.

All complaints, answers, discovery, deposition transcripts or other pleadings or documents from claims asserted or lawsuits filed against you, within the last ten (10) years, where it was claimed or alleged that you participated in a scheme to wrongfully deny, misrepresent or refuse insurance benefits. This request includes copies of any settlement agreements from any such case.

30.

Identify and produce every document which mentions, discusses, or refers to the Umbrella policy and/or the Cancellation request.

31.

A copy of your document retention/destruction policies in force and effect at any time from January 2012 through the present. [Including but not limited to any such policies applicable to claims files.]

32.

All documents that you contend support any of the affirmative defenses asserted by you in your answer.

11

33.

Any other "document" in your possession not otherwise requested herein regarding the Umbrella policy, the Affidavit of Insurance, the Cancellation, and the Settlement Release as defined in the definitions above.

This __3rd__ day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

_____
ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

_____
LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bullock Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
STATE COURT
GWINNETT COUNTY, GA

2017 MAR -6  AM 10: 31

RICHARD ALEXANDER, CLERK

**17 C  01208 -6**

JOHN W. STOREY and SUZANNE L. STOREY,  )
as the Surviving Parents of JOHN JARED      )
STOREY and as Administrators of the ESTATE of )
JOHN JARED STOREY,                                      )
                                                                     )
     Plaintiffs,                                                  )
                                                                     )
v.                                                                   )
                                                                     )
OWNERS INSURANCE COMPANY,                 )
AUTO-OWNERS INSURANCE COMPANY, and )
FRANCINA SWINTON,                                      )
                                                                     )
     Defendants.                                              )

Civil Action No.

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION
## TO DEFENDANT OWNERS INSURANCE COMPANY

COME NOW, Plaintiffs in the above-styled action, and pursuant to O.C.G.A. § 9-11-36,

submit the following Requests for Admission to Defendant Owners Insurance Company:

### DEFINITIONS

1.  **"You," "your," "Owners,"** or **"Defendant"** means Owners Insurance Company upon

whom these requests have been served, their attorneys, adjusters, agents and employees.

2.  **"Marietta Motorsports," "Insured,"** or **"your insured"** means Marietta Motor Sports,

Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of

Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-

Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports,

Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters,

Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

3.  **"March 9, 2014 incident"** or **"underlying incident"** means the incident wherein John

Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis

for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

4.     "**Umbrella policy**" means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

5.     "**Cancellation**" means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

6.     "**Settlement Release**" means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

7.     "**Affidavit of Insurance**" or "**Affidavit**" means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## REQUESTS

### 1.

Service of process on you is proper.

### 2.

You are properly identified in the style of the Complaint.

### 3.

You are subject to the jurisdiction of this Court.

### 4.

Venue is proper in this Court.

2

5.

There has not been a failure to join a necessary or indispensable party to this action.

6.

On November 14, 2014, Plaintiffs' counsel sent a letter to Auto-Owners, pursuant to O.C.G.A. § 33-3-28, requesting identification of all policies of insurance which might provide coverage to Marietta Motor Sport, Inc. for the March 9, 2014 incident.

7.

On December 16, 2014, Liza Hendriz, a claims adjuster with Owners, sent a letter to Plaintiffs' counsel concerning Claim/File No. 87-953-2014, indicating "Our investigation shows there is no coverage under the policy to pay your claim."

8.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Owners had knowledge of insurance policies issued to Marietta Motorsports, including Policy No. 43-737-118-02, Policy No. 024618-48006341-13, and Policy No. 43-737-118-04.

9.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Owners had knowledge that Policy No. 43-737-118-02 potentially provided coverage for the March 9, 2014 incident.

10.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Owners had knowledge that Policy No. 024618-48006341-13 potentially provided coverage for the March 9, 2014 incident.

3

11.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, Owners had knowledge that the Umbrella policy potentially provided coverage for the March 9, 2014 incident.

12.

On March 6, 2015, in reference to Claim/File No. 87-953-2014 and on behalf of Owners, Ms. Liza Hendrix left a voice message for Plaintiffs' counsel indicating that there was no coverage and that "the policy was rescinded back to the date of the incident."

13.

At the time Ms. Hendrix left the March 6, 2015 voice message, Owners had knowledge of the insurance policies issued to Marietta Motor Sport, Inc., including Policy No. 43-737-118-02, Policy No. 024618-48006341-13, and Policy No. 43-737-118-04.

14.

At the time Ms. Hendrix left the March 6, 2015 voice message, Owners had knowledge that Policy No. 43-737-118-02 potentially provided coverage for the March 9, 2014 incident.

15.

At the time Ms. Hendrix left the March 6, 2015 voice message, Owners had knowledge that Policy No. 024618-48006341-13 potentially provided coverage for the March 9, 2014 incident.

16.

At the time Ms. Hendrix left the March 6, 2015 voice message, Owners had knowledge that the Umbrella policy potentially provided coverage for the March 9, 2014 incident.

17.

On August 17, 2015, counsel for Owners sent a letter and email including "policy documents issued to Marietta Motorsports, Inc. by Owners Insurance Company."

18.

The August 17, 2015, letter and email from counsel for Owners did not identify or contain any documents referencing the Umbrella policy.

19.

At the time of the August 17, 2015, letter and email from Owners' counsel, Owners had knowledge of the Umbrella policy.

20.

At the time of the August 17, 2015, letter and email from Owners' counsel, Owners had knowledge that the Umbrella policy provided coverage for the March 9, 2014 incident.

21.

On September 2, 2015, Plaintiffs' counsel sent a letter to counsel for Owners, requesting complete copies of the polices: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 024618-80006341-13.

22.

On September 10, 2015, Plaintiffs' counsel forwarded to counsel for Owners medical records documenting the permanent, catastrophic injuries suffered by Jared including medical bills at that time totaling $2,153,339.35, also requested complete copies of the policies of insurance for Marietta Motorsports.

23.

On September 18, 2015, counsel for Owners forwarded complete copies of: Policy No. 43-737-118-02 ("Garage"), Policy No. 024618-48006341-13 ("CGL"), and Policy No. 024618-80006341-13.

24.

Owners had knowledge of the Umbrella policy when forwarding the Garage and CGL policies, but did not forward the Umbrella policy.

25.

On September 28, 2015, as the court-appointed guardians and conservators of their son, Plaintiffs issued a demand for $2,000,000.00 to Marietta Motorsports and Owners, contingent upon the accuracy of the then stated insurance coverage limits.

26.

On October 16, 2015, counsel for Owners Insurance Company confirmed the existence of the Umbrella policy and provided Plaintiffs with a copy of the policy and the Cancellation request.

27.

October 16, 2015, was the first time Owners Insurance Company disclosed the Umbrella policy to Plaintiffs.

28.

At the time Owners disclosed the Umbrella policy, Owners was aware that the Umbrella policy potentially provided insurance coverage for the March 9, 2014 incident.

6

29.

At the time Owners disclosed the Umbrella policy, Owners was aware that the Umbrella policy provided insurance coverage for the March 9, 2014 incident.

30.

The Umbrella policy's initial policy period was October 16, 2013 through October 16, 2014.

31.

Prior to the Cancellation request, the Umbrella policy had been in effect and providing insurance coverage to Marietta Motorsports for more than 60 days.

32.

Owners stated to Plaintiffs that the Cancellation request had been signed by the insured, Marietta Motorsports.

33.

The Cancellation request related to the Umbrella policy was not signed by Marietta Motorsports.

34.

Marietta Motorsports never requested the Cancellation of the Umbrella policy.

35.

The Cancellation request states it was requested "PER CARRIER."

36.

The Cancellation of the Umbrella policy was requested by Owners.

37.

Notice of the Cancellation of the Umbrella policy was sent to Marietta Motorsports on February 7, 2014.

38.

The "Georgia Policy Cancellation and Nonrenewal Endorsement" accompanying the Umbrella policy, controls when that policy is determined to be effectively canceled, based upon the date of the request and whether the insured or insurer are making said request.

39.

On October 30, 2015, Owners sent a written offer of $1,000,000.00 to Plaintiffs for settlement of all claims arising out of the March 9, 2014, incident.

40.

With the written offer of October 30, 2015, Owners indicated that the $1,000,000.00 was the applicable limits of insurance for the March 9, 2014, incident.

41.

With the written offer of October 30, 2015, Owners indicated the Umbrella policy "was clearly canceled effective January 31, 2014."

42.

At the time Owners extended the $1,000,000.00 offer, Owners knew the Umbrella policy was still in effect and providing coverage as of March 9, 2014.

43.

At the time of the settlement offer, Owners intentionally misrepresented the Cancellation of the Umbrella policy.

44.

At the time of the settlement offer, Owners intentionally misrepresented the amount of available insurance limits for the March 9, 2014 incident.

45.

As part of the settlement of the March 9, 2014, incident, Francina Swinton signed an Affidavit of Insurance, attesting to the policies provided by Owners to Marietta Motorsports, and the available insurance limits afforded.

46.

At the time of signing the Affidavit of Insurance, Francina Swinton was an underwriting manager acting on behalf of Owners.

47.

Owners made edits and/or revisions to the Affidavit of Insurance indicating and affirming that the Umbrella policy, was effectively canceled on January 31, 2014 and did not provide coverage for the loss.

48.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy had not been canceled effective January 31, 2014.

49.

At the time Francina Swinton signed the Affidavit of Insurance, Owners knew the Umbrella policy had not been canceled effective January 31, 2014.

50.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy was in effect on March 9, 2014.

51.

At the time Francina Swinton signed the Affidavit of Insurance, Owners knew the Umbrella policy was in effect on March 9, 2014.

52.

At the time Francina Swinton signed the Affidavit of Insurance, she knew the Umbrella policy provided an additional $1,000,000.00 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

53.

At the time Francina Swinton signed the Affidavit of Insurance, Owners knew the Umbrella policy provided an additional $1,000,000 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

54.

Francina Swinton intentionally misrepresented that the Cancellation request was signed by the Marietta Motorsports.

55.

Owners intentionally misrepresented that the Cancellation request was signed by the Marietta Motorsports.

56.

Francina Swinton intentionally misrepresented that the Cancellation request was effective on January 31, 2014.

57.

Owners intentionally misrepresented that the Cancellation request was effective on January 31, 2014.

58.

Francina Swinton intentionally misrepresented the amount of available insurance limits for the March 9, 2014 incident.

59.

Owners intentionally misrepresented the amount of available insurance limits for the March 9, 2014 incident.

60.

Francina Swinton made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

61.

Owners made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

62.

Francina Swinton made false statements and misrepresentations which were communicated to Plaintiffs via electronic mail and telephone.

63.

Owners made false statements and misrepresentations which were communicated to Plaintiffs via electronic mail and telephone.

This _3rd_ day of March, 2017.

                                        CASH, KRUGLER & FREDERICKS, LLC

                                        ANDREW B. CASH
                                        Georgia Bar No. 743459
                                        SHANE E. BARTLETT
                                        Georgia Bar No. 040551

11

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

THE VICKERY LAW FIRM

LAURA K. VICKERY
*(signed by Shane E. Bartlett w/ express permission)*
Georgia Bar No. 050110

138 Bulloch Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA 2017 MAR -6  AM 10: 32

JOHN W. STOREY and SUZANNE L. STOREY,  )
as the Surviving Parents of JOHN JARED        )
STOREY and as Administrators of the ESTATE of )
JOHN JARED STOREY,                            )
                                              )
          Plaintiffs,                         )
                                              )
v.                                            )
                                              )
OWNERS INSURANCE COMPANY,                    )
AUTO-OWNERS INSURANCE COMPANY, and )
FRANCINA SWINTON,                            )
                                              )
          Defendants.                         )

RICHARD ALEXANDER, CLERK

**7 C  01208 -6**

Civil Action No.

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION
## TO DEFENDANT FRANCINA SWINTON

COME NOW, Plaintiffs in the above-styled action, and pursuant to O.C.G.A. § 9-11-36, submit the following Requests for Admission to Defendant Francina Swinton:

## DEFINITIONS

1.    "**You**," "**your**" or "**Defendant**" means Francina Swinton upon whom these requests have been served.

2.    "**Marietta Motorsports**," "**Insured**," or "**your insured**" means Marietta Motor Sports, Inc., which is the legal name on file with the Georgia Secretary of State for the subject insured of Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners"). Insomuch as Owners/Auto-Owners refers to its insured as "Marietta Motorsports, Inc. d/b/a KTM World Highland Park" and "Marietta Motorsport, Inc." in its policies and letters, Marietta Motor Sports, Inc. will hereinafter be referred to as "Marietta Motorsports."

3.    "**March 9, 2014 incident**" or "**underlying incident**" means the incident wherein John Jared Storey was injured due to the negligence of Marietta Motorsports and which was the basis

for the underlying personal injury claims presented to Owners/Auto-Owners and identified by Owners/Auto-Owners as Claim/File No. 87-953-2014.

4.      **"Umbrella policy"** means the commercial umbrella policy issued by Owners Insurance Company to Marietta Motorsports, Inc. d/b/a KTM World Highland Park ("Marietta Motorsports"), Policy No. 43-737-118-04.

5.      **"Cancellation"** means the cancellation form signed on February 3, 2014 and dated February 4, 2014, referencing the "Umbrella policy," Policy No. 43-737-118-04.

6.      **"Settlement Release"** means the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident.

7.      **"Affidavit of Insurance"** or **"Affidavit"** means the affidavit executed on December 2, 2015, by Defendant Francina Swinton on behalf of Owners/Auto-Owners, which was referenced and attached as part of the Settlement Agreement and Release of All Claims signed by Plaintiffs on February 19, 2016, arising out of the March 9, 2014 incident and injuries sustained by John Jared Storey, deceased.

## REQUESTS

### 1.

Service of process on you is proper.

### 2.

You are properly identified in the style of the Complaint.

### 3.

You are subject to the jurisdiction of this Court.

### 4.

Venue is proper in this Court.

5.

There has not been a failure to join a necessary or indispensable party to this action.

6.

As part of the settlement of the March 9, 2014, incident, you executed an Affidavit of Insurance, attesting to the policies provided by Owners to Marietta Motorsports, and the available insurance limits afforded.

7.

At the time of signing the Affidavit of Insurance, you were an underwriting manager acting on behalf of Owners.

8.

At the time of signing the Affidavit of Insurance, you were an underwriting manager acting on behalf of Auto-Owners.

9.

You signed the Affidavit of Insurance at the direction and request of Owners.

10.

You signed the Affidavit of Insurance at the direction and request of Auto-Owners.

11.

You made edits and/or revisions to the Affidavit of Insurance.

12.

In signing the Affidavit of Insurance, you attested and affirmed that the Umbrella policy, was effectively canceled on January 31, 2014 and did not provide coverage for the loss.

3

13.

Prior to signing the Affidavit of Insurance, you reviewed the insurance policies issued by Owners to Marietta Motorsports.

14.

Prior to signing the Affidavit of Insurance, you reviewed the Umbrella policy issued by Owners to Marietta Motorsports.

15.

Prior to signing the Affidavit of Insurance, you reviewed the claims file identified as Claim/File No. 87-953-2014, pertaining to the March 9, 2014, incident.

16.

Prior to signing the Affidavit of Insurance, you knew that Plaintiffs' counsel had requested identification of all policies of insurance which might provide coverage to Marietta Motorsports. for the March 9, 2014 incident.

17.

Prior to signing the Affidavit of Insurance, you knew that on December 16, 2014, Liza Hendrix, had sent a letter to Plaintiffs' counsel concerning Claim/File No. 87-953-2014, indicating "Our investigation shows there is no coverage under the policy to pay your claim."

18.

At the time Ms. Hendrix sent the December 16, 2014 letter concerning Claim/File No. 87-953-2014, there were three (3) insurance policies issued to Marietta Motorsports, including Policy No. 43-737-118-02, Policy No. 024618-48006341-13, and Policy No. 43-737-118-04, that potentially provided coverage.

4

19.

Prior to signing the Affidavit of Insurance, you knew that Ms. Liza Hendrix had communicated to Plaintiffs' that there was no coverage for Claim/File No. 87-953-2014.

20.

Prior to signing the Affidavit of Insurance, you knew that John Jared Storey had suffered permanent, catastrophic injuries resulting in medical bills in excess of $2,000,000.00 as a result of the March 9, 2014 incident.

21.

Prior to signing the Affidavit of Insurance, you knew Plaintiffs had issued a demand for $2,000,000.00 to Marietta Motorsports and Owners, contingent upon the accuracy of the then stated insurance coverage limits.

22.

Prior to signing the Affidavit of Insurance, you knew Owners sent a written offer of $1,000,000.00 to Plaintiffs for settlement of all claims arising out of the March 9, 2014, incident.

23.

Prior to signing the Affidavit of Insurance, you knew that with the written offer of October 30, 2015, Owners indicated that the $1,000,000.00 was the applicable limits of insurance for the March 9, 2014, incident.

24.

Prior to signing the Affidavit of Insurance, you knew that with the written offer of October 30, 2015, Owners indicated the Umbrella policy "was clearly canceled effective January 31, 2014."

25.

Prior to signing the Affidavit of Insurance, you knew that at the time Owners extended the $1,000,000.00 offer, Owners was aware the Umbrella policy was still in effect and providing coverage as of March 9, 2014.

26.

Prior to signing the Affidavit of Insurance, you knew that at the time Owners extended the settlement offer, Owners intentionally misrepresented the Cancellation of the Umbrella policy.

27.

Prior to signing the Affidavit of Insurance, you knew that at the time Owners extended the settlement offer, Owners intentionally misrepresented the amount of available insurance limits for the March 9, 2014 incident.

28.

Prior to signing the Affidavit of Insurance, you knew Owners had indicated to Plaintiffs that the Cancellation request had been signed by the insured, Marietta Motorsports.

29.

Prior to signing the Affidavit of Insurance, you knew Owners had indicated to Plaintiffs that the Cancellation was effective January 31, 2014, and did not provide coverage for the March 9, 2014, incident.

30.

Prior to signing the Affidavit of Insurance, you reviewed the Cancellation request.

31.

Prior to signing the Affidavit of Insurance, you knew the Cancellation request was not signed on January 31, 2014.

32.

Prior to signing the Affidavit of Insurance, you knew the Cancellation was not requested by Marietta Motorsports.

33.

Prior to signing the Affidavit of Insurance, you knew the Cancellation stated it was requested "PER CARRIER."

34.

Prior to signing the Affidavit of Insurance, you knew the terms under the "Georgia Policy Cancellation and Nonrenewal Endorsement" accompanying the Umbrella policy.

35.

Admit that the "Georgia Policy Cancellation and Nonrenewal Endorsement" accompanying the Umbrella policy, controls when that policy is determined to be effectively canceled, based upon the date of the request and whether the insured or insurer are making said request.

36.

Prior to signing the Affidavit of Insurance, you knew the Umbrella policy was not canceled for non-payment.

37.

Prior to signing the Affidavit of Insurance, you knew that the Umbrella policy period started on October 16, 2013.

38.

Prior to signing the Affidavit of Insurance, you reviewed the February 7, 2014, notice to Marietta Motorsports concerning the cancellation of the Umbrella policy.

39.

Prior to signing the Affidavit of Insurance, you knew the Cancellation was not effective on January 31, 2014.

40.

At the time you signed the Affidavit of Insurance, you knew the Umbrella policy had not been canceled effective January 31, 2014.

41.

At the time you signed the Affidavit of Insurance, Owners knew the Umbrella policy had not been canceled effective January 31, 2014.

42.

At the time you signed the Affidavit of Insurance, you knew the Umbrella policy was in effect on March 9, 2014.

43.

At the time you signed the Affidavit of Insurance, Owners knew the Umbrella policy was in effect on March 9, 2014.

44.

At the time you executed the Affidavit of Insurance, you knew the Umbrella policy provided an additional $1,000,000.00 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

45.

At the time you signed the Affidavit of Insurance, Owners knew the Umbrella policy provided an additional $1,000,000.00 in insurance coverage to Marietta Motorsports for the March 9, 2014 incident.

46.

In signing the Affidavit of Insurance, you misrepresented that the Cancellation request was signed by the Marietta Motorsports.

47.

In signing the Affidavit of Insurance, you misrepresented that the Cancellation request was effective on January 31, 2014.

48.

You knew the Affidavit of Insurance was part of the settlement of the claims arising out of the March 9, 2014, incident.

49.

You knew the Affidavit of Insurance would be attached to the Settlement Release.

50.

In signing the Affidavit of Insurance, you misrepresented the amount of available insurance limits for the March 9, 2014 incident.

51.

You knew Owners misrepresented the amount of available insurance limits for the March 9, 2014 incident.

52.

The Affidavit of Insurance signed by you was sent to Plaintiffs via the United States Postal Service.

53.

The Affidavit of Insurance signed by you was sent to Plaintiffs via electronic mail.

54.

You made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

55.

You knew Owners made false statements and misrepresentations which were in turn communicated to Plaintiffs via the United States Postal Service.

56.

You made false statements and misrepresentations which were communicated to Plaintiffs via electronic mail.

57.

You knew Owners made false statements and misrepresentations which were communicated to Plaintiffs via electronic mail and/or telephone.

This _3rd_ day of March, 2017.

CASH, KRUGLER & FREDERICKS, LLC

ANDREW B. CASH
Georgia Bar No. 743459
SHANE E. BARTLETT
Georgia Bar No. 040551

5447 Roswell Road, N.E.
Atlanta, Georgia 30342

(404) 659-1710
(404) 264-1149 (facsimile)
acash@ckandf.com
sbartlett@ckandf.com

                THE VICKERY LAW FIRM

                LAURA K. VICKERY
                *(signed by Shane E. Bartlett w/ express permission)*
                Georgia Bar No. 050110

138 Bulloch Avenue
Roswell, Georgia 30075
(404) 593-2680
(844) 303-2003 (facsimile)
laurie@vblawpc.com



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

2017 MAR 13  PM 3:03

JOHN W. STOREY AND SUZANNE L. STOREY
as the Surviving Parents of JOHN JARED STOREY
and as Administrators of the Estate of JOHN
JARED STOREY

RICHARD ALEXANDER, CLERK

        **Plaintiffs,**

vs.                                    CIVIL ACTION NO.: 07 C 01208-6

OWNERS INSURANCE COMPANY, AUTO OWNERS
INSURANCE COMPANY AND FRANCINO SWINTON

        **Defendants.**

---

### AFFIDAVIT OF SERVICE

Personally appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham an agent of Dial Services, Inc., after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **March 8, 2017**, at approximately **1:50 p.m., OWNERS INSURANCE COMPANY.,** Defendant in the above referenced matter, was served with Summons, Complaint, Plaintiff's 1st Request for Admission to Defendant Owners Insurance Company, Plaintiff's 1st Request for Admission to Defendant Auto-Owners Insurance Company, Plaintiff's First Request for Admissions to Defendant Francina Swinton, Plaintiff's 1st Continuing Interrogatories to Defendants Owners Insurance Company and Auto-Owners Insurance Company and Plaintiff's 1st Request for Production of Documents to Defendants Owners Insurance Company and Auto-Owners Insurance Company. Service was perfected on Amelia Garner, a person authorized to accept service for CT Corporation, the reported Registered Agent for Owners Insurance Company. Service was perfected at 1201 Peachtree Street Atlanta, Georgia.

                                           Affiant/James Basham

Sworn to and subscribed before me
this 8th day of March, 2017.

*Patty Ramirez*
NOTARY PUBLIC *My commission Expires 02/10/19*

PATTY RAMIREZ
My Commission
NOTARY
PUBLIC
...ON COUNTY, GEORGIA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY GA

2017 JAN -4 PM 3:21

RICHARD ALEXANDER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

17C 00001-1

IN RE: Permanent Process Servers

Case Number:

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order up to and including January 4, 2018.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this _4_ day of _January_ 20_17_

_____
Presiding Judge
Gwinnett County State Court

Applicant

Name:

Address: James Steven Bapthum
367 Athens Hwy # 1000
Loganville GA 2052

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2017 MAR 13  PM 3: 03

RICHARD ALEXANDER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

JOHN W. STOREY AND SUZANNE L. STOREY
as the Surviving Parents of JOHN JARED STOREY
and as Administrators of the Estate of JOHN
JARED STOREY

       Plaintiffs,

vs.                      CIVIL ACTION NO.: 07 C 01208-6

OWNERS INSURANCE COMPANY, AUTO OWNERS
INSURANCE COMPANY AND FRANCINO SWINTON

       Defendants.

---

### AFFIDAVIT OF SERVICE

     Personally appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham an agent of Dial Services, Inc., after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

     On **March 10, 2017**, at approximately **2:10 p.m.**, **FRANCINA SWINTON**, Defendant in the above referenced matter, was served with Summons, Complaint, Plaintiff's 1st Request for Admission to Defendant Owners Insurance Company, Plaintiff's 1st Request for Admission to Defendant Auto-Owners Insurance Company, Plaintiff's First Request for Admissions to Defendant Francina Swinton, Plaintiff's 1st Continuing Interrogatories to Defendants Owners Insurance Company and Auto-Owners Insurance Company and Plaintiff's 1st Request for Production of Documents to Defendants Owners Insurance Company and Auto-Owners Insurance Company. Service was perfected on Genie Swinton (mother), a person of suitable age who resides in the home with Francina Swinton. Service was perfected at 970 Mulberry Bay Drive Dacula, Georgia 30019.

                                      Affiant/James Basham

Sworn to and subscribed before me
this 10th day of March, 2017.

_Patty Ramirez_
NOTARY PUBLIC *My commission Expires: 02/19/19*

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY GA

2017 JAN -4 PM 3: 21

RICHARD ALEXANDER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number:

17C  00001-1

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said
applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c)
from the date of this order up to and including January 4, 2018.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only,
on an annual renewable basis.

SO ORDERED this _4_ day of _January_ 20 17

_____
Presiding Judge
Gwinnett County State Court

Applicant

Name

Address  James Steven Brittain
367 Athens Hwy #10
Loganville GA 2005?

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA.

2017 MAR 13  PM 3: 03

RICHARD ALEXANDER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

JOHN W. STOREY AND SUZANNE L. STOREY
as the Surviving Parents of JOHN JARED STOREY
and as Administrators of the Estate of JOHN
JARED STOREY

        Plaintiffs,

vs.                              **CIVIL ACTION NO.: 07 C 01208-6**

OWNERS INSURANCE COMPANY, AUTO OWNERS
INSURANCE COMPANY AND FRANCINO SWINTON

        Defendants.

---

### AFFIDAVIT OF SERVICE

Personally appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham an agent of Dial Services, Inc., after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **March 8, 2017**, at approximately **1:50 p.m.**, **AUTO-OWNERS INSURANCE COMPANY**, Defendant in the above referenced matter, was served with Summons, Complaint, Plaintiff's 1st Request for Admission to Defendant Owners Insurance Company, Plaintiff's 1st Request for Admission to Defendant Auto-Owners Insurance Company, Plaintiff's First Request for Admissions to Defendant Francina Swinton, Plaintiff's 1st Continuing Interrogatories to Defendants Owners Insurance Company and Auto-Owners Insurance Company and Plaintiff's 1st Request for Production of Documents to Defendants Owners Insurance Company and Auto-Owners Insurance Company. Service was perfected on Amelia Garner, a person authorized to accept service for CT Corporation, the reported Registered Agent for Auto-Owners Insurance Company. Service was perfected at 1201 Peachtree Street Atlanta, Georgia.

Affiant James Basham

Sworn to and subscribed before me
this 8th day of March, 2017.

_Patty Bonner_
NOTARY PUBLIC *My commission Expires: 02/19/19*

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY GA.

2017 JAN -4 PM 3: 21

RICHARD ALEXANDER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

17C- 00001-1

IN RE: Permanent Process Servers

Case Number:

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said
applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c)
from the date of this order up to and including January 4, 2018.

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only,
on an annual renewable basis.

SO ORDERED this   4   day of   January   20 17.

_____
Presiding Judge,
Gwinnett County State Court

Applicant:

Name

Address

James Steven Brotherton
367 Athens Hwy #1000
Loganville GA 30052

D-6

State Court Administrative Standing Order [December 2014] Change 1 [February 2015]