# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JOHN W. STOREY and SUZANNE L. STOREY, as Administrators of the Estate of JOHN JARED STOREY,<br><br>    Plaintiffs,<br><br>    v.<br><br>OWNERS INSURANCE COMPANY, AUTO-OWNERS INSURANCE COMPANY, and FRANCINA SWINTON,<br><br>    Defendants. | 1:17-cv-1247-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs John W. Storey and Suzanne L. Storey ("Plaintiffs") Motion to Remand [13]; Defendant Francina Swinton's ("Ms. Swinton") Motion to Dismiss Francina Swinton as an Improperly Named Party [3] (the "Swinton Motion"); and Defendants Owners Insurance Company ("Owners") and Auto-Owners Insurance Company's ("Auto-Owners," together with Owners, the "Insurers") Joint Motion to Dismiss [4] (the "Insurers' Motion to Dismiss").

## I. BACKGROUND

### A. Facts

Plaintiff John W. Storey and Suzanne L. Storey are the surviving parents and administrators of the estate of their son, John Jared Storey. John Jared Storey suffered severe injuries on March 9, 2014, when he was injured while attempting to perform a jump with a motorized bike at Marietta Motorsports, Inc. ("Marietta Motorsports"). (Complaint [1.1] "Compl." ¶ 9). John Jared Storey died from his injuries on December 10, 2015. (Id. ¶ 37).

Plaintiffs made demands on Marietta Motorsports and Owners and Auto-Owners for compensation for negligently performing work on John Jared Story's motorbike prior to the accident. The Insurers issued liability insurance coverage to Marietta Motorsports. The parties entered into settlement negotiations. When they began, a claims adjustor for Owners represented to Plaintiffs that Owners did not cover the March 9, 2014, incident. (Id. ¶¶ 17-21). Later in the negotiations, the Insurers identified and disclosed to Plaintiffs the existence of a Commercial General Liability Policy ("CGL Policy") and a Garage Liability Policy ("Garage Policy"), each with limits of $1,000,000.

After Plaintiffs made their settlement demand, they learned from counsel to Marietta Motorsports about the possible existence of a General Commercial

Umbrella Policy ("Umbrella Policy"). (Id. ¶ 30). When Plaintiffs asked about the Umbrella Policy, the Insurers' counsel stated in an October 16, 2015, email there was an Umbrella Policy, but that it "was canceled before this accident." ([13.4]). The Insurers' counsel gave Plaintiffs a copy of the Umbrella Policy, and a copy of the policy cancelation document. (Compl. ¶ 32).

After this representation was made Plaintiffs decided to settle the case. Because Plaintiff agreed to the settlement amount based on their understanding of the insurance policy coverage available they requested a representation from the Insurers under oath that coverage under the Umbrella Policy was not available. In response, on or about December 2, 2015, Ms. Swinton, in her capacity as the underwriting manager for the Insurers, executed an affidavit stating that the Umbrella Policy was canceled prior to the accident, rendering the additional $1 million layer of coverage unavailable. ([13.2] (the "Swinton Affidavit")). The Swinton Affidavit states that, other than the Garage Policy and the CGL Policy, "there were no other insurance policies in force or effect at the time of the Subject Incident." (Id. ¶ 5). The Affidavit further states, "While [Owners] issued a Commercial Umbrella Insurance Policy to Marietta Motorsports . . . with an original policy period of October 16, 2013 to October 16, 2014, this Umbrella policy was canceled effective January 31, 2014." (Id.). The Affidavit concludes,

"I understand that the information provided herein is being provided to Claimants and/or their Counsel, who are relying on the truth and accuracy of these statements." (Id. ¶ 6).

On or about February 19, 2016, Plaintiffs and Marietta Motorsports entered into a settlement based on payment of the limits of Marietta Motorsports's liability insurance. ([13.1] (the "Settlement Agreement")). The Settlement Agreement includes a general release of Marietta Motorsports, which states: "[Plaintiffs] fully, finally, and forever completely release Marietta Motorsports . . . together with [its] insurers . . . from any and all claims, demands, damages, costs, settlements, expenses, awards, liability, judgments, actions, causes of action, or claims of liability or responsibility of any kind whatsoever which [Plaintiffs] now have, may have, has had, or may hereafter have at any time in the future" arising out of the accident. (Id. ¶ 1). The Settlement Agreement further provides that "$1,000,000 is the only coverage provided by Owners/Auto-Owners for this claim as set forth in the attached [Swinton Affidavit] and Releasees have expressly relied on this affidavit from Owners/Auto-Owners in entering into this settlement agreement." (Id. ¶ 19).[1]

---

[1] In the Settlement Agreement, "[Plaintiffs] agree and represent that no promise or agreement not expressed herein has been made to them other than that

Plaintiffs allege as false the representation in the Swinton Affidavit that the Umbrella Policy was canceled before the accident.  Plaintiffs allege further that the Insurers and Ms. Swinton fraudulently induced Plaintiffs to settle their claims for an amount less than what they would have accepted if Plaintiffs had known that the Umbrella Policy was not canceled before the accident.  Plaintiffs allege that Marietta Motorsports did not request cancelation of the Umbrella Policy, did not sign the cancelation, and that coverage under the Umbrella Policy was available to cover the accident.  To support this position, Plaintiffs submitted the Declaration of Paul Wright, CEO of Marietta Motorsports ([13.3] "Wright Decl.").  In it Mr. Wright states: "The 'Signature of Named Insured' referenced in attached cancelation request . . . for the commercial umbrella policy . . . is not my signature, and I did not authorize anyone to sign this request on my behalf or on behalf of Marietta Motorsports."  (Wright Decl. ¶ 5).

B.  Procedural History

On March 6, 2017, Plaintiffs filed their complaint in the State Court of Gwinnett County, Georgia against the Insurers and Ms. Swinton (17-C-01208-S6) [1.1].  Plaintiffs assert claims against the Defendants for violation of the Georgia

---

which is set forth in this Release, [and] that this Release contains the entire agreement between the parties."  (Settlement Agreement ¶ 6).

Racketeering Influenced and Corrupt Organizations ("RICO") Act; negligent misrepresentation; fraud and deceit under O.C.G.A.§ 51-6-2; and attorney's fees.

On April 6, 2017, the Insurers filed their Notice of Removal [1], under 28 U.S.C. §§ 1332 and 1441. The Insurers allege that this Court may exercise diversity jurisdiction over this action because Ms. Swinton, a citizen of Georgia, was fraudulently joined by Plaintiffs to defeat diversity jurisdiction.

On April 7, 2017, Ms. Swinton filed her Motion to Dismiss [3] on the grounds she was improperly joined as a party to this action.

On April 12, 2017, the Insurers filed their Joint Motion to Dismiss [4].

The Court considers first Plaintiffs' motion to remand because the Court must first determine if it has federal diversity jurisdiction over this action. 28 U.S.C. § 1332.

## II. DISCUSSION

### A. Diversity Jurisdiction Principles

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C § 1332(a). "Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant." Palmer Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994). "Citizenship for diversity purposes is

determined at the time the suit is filed." MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 (11th Cir. 2005).

When a defendant removes a case from state to federal court based on diversity of citizenship, diversity is determined based on the allegations of the complaint and any additional factual information contained in affidavits, deposition testimony or other competent evidence submitted to support a defendant's notice of removal. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The burden to establish diversity jurisdiction "rests with the defendant seeking removal." Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013); City of Vestavia Hills v. Gen. Fidelity Ins. Co., 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction.").

Plaintiffs in this action are citizens of Georgia. (Compl. ¶ 1-2). See 28 U.S.C. §1331(c)(2) (stating that legal representatives of estate shall be citizens "only of the same State as the decedent"); King v. Cessna Aircraft Co., 505 F.3d 1160, 1170 (11th Cir. 2007) ("Where an estate is a party, the citizenship that

7

counts for diversity purposes is that of the decedent . . . [where] she was domiciled at the time of her death").[2]

There are three Defendants: Owners, Auto-Owners, and Ms. Swinton. Owners is organized under Ohio law with its principal place of business in Michigan. (Compl. ¶ 3). Auto-Owners is organized under Michigan law with its principal place of business in Michigan. (Id. ¶ 4). They are diverse from Plaintiffs. Ms. Swinton is a citizen of Georgia. Defendants argue that Plaintiffs named her as a defendant to defeat diversity, that she was thus fraudulently joined, must be dismissed and that jurisdiction in this Court is appropriate. The Court considers if Ms. Swinton was joined fraudulently.

B. Fraudulent Joinder

Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs v. John Crump

---

[2] The Complaint purports an amount in controversy exceeding $75,000. Plaintiffs specifically allege that Defendants' wrongdoing "resulted in Plaintiffs agreeing to a settlement for $1,000,000 when they would have only accepted $2,000,000 had they been rightfully informed." (Compl. ¶ 88). It is apparent from the Complaint that Plaintiffs are demanding at least $1,000,000 in damages. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010) ("When the complaint does not claim a specific amount of damages, removal from state court is jurisdictionally proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional amount.") (citations omitted). The parties do not contest that the amount in controversy requirement is met.

8

Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). Where fraudulent joinder is established, "the district court must ignore the presence of the non-diverse [fraudulently joined] defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

When fraudulent joinder is alleged, "the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). "If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the Complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." Florence v. Crescent Res., LLC, 484 F.3d 1293, 1299 (11th Cir. 2007). "The burden to prove fraudulent joinder is a heavy one." Pacheco de Perez, 139 F.3d at 1380. It must be "supported by clear and convincing evidence." Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962).

"To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must

resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. "[W]hether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez, 139 F.3d at 1380; see also Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287.

C. Analysis

The question here is whether Plaintiffs have asserted a claim or claims against Ms. Swinton "that might impose liability" against her under state law. Florence, 484 F.3d at 1299. Defendants must prove by clear and convincing evidence they have not. Plaintiffs assert claims based on the Georgia RICO Act, negligent misrepresentation, and fraud and deceit.

1. The Settlement Agreement

Defendants argue that Plaintiffs have affirmed the Settlement Agreement and therefore are bound by its terms. (Notice of Removal ¶ 11). Plaintiffs do not contest that they affirmed the contract and are suing for damages. ([13] at 12-13).

10

Defendants argue that because Plaintiffs are suing under the Settlement Agreement, the Complaint cannot support a cause of action against Ms. Swinton because (i) the release in the Settlement Agreement bars Plaintiff's fraud claims and (ii) the purported merger clause extinguishes claims based on representations prior to the Plaintiffs' entering into the Settlement Agreement. (Notice of Removal ¶ 9).

Plaintiffs argue that Defendants' misrepresentation was made contemporaneously with and incorporated into the Settlement Agreement. Georgia law supports that a fraudulent representation made in a settlement agreement is not released because the cause of action does not arise until after the agreement is signed. See Gaines v. Crompton & Knowles Corp., 380 S.E.2d 498, 502 (Ga. Ct. App. 1989). Here, the Settlement Agreement incorporates by reference the Swinton Affidavit that contains the allegedly fraudulent representation regarding the availability of coverage. (Settlement Agreement ¶ 19). The Complaint alleges that Ms. Swinton's statements were not pre-contract representations but were instead made in the Swinton Affidavit and submitted "[a]s part of the Settlement." (Compl. ¶ 40). Furthermore, the Settlement Agreement itself states that "[Plaintiffs] have expressly relied on this affidavit from Owners/Auto-Owners in entering into this settlement agreement." (Settlement Agreement ¶ 19). Because

Ms. Swinton's representations were incorporated into the Settlement Agreement, there is at least a *possibility* that Georgia law will support tort claims against Defendants.

Similarly, the purported merger clause does not preclude Plaintiffs' claims under Georgia law. See Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc., 586 S.E.2d 726, 729 (Ga. Ct. App. 2003) ("Because the record shows that [plaintiff] relied upon misrepresentations in the contract itself, no alleged merger clause can bar its fraud and misrepresentation claims."). Because the record shows that Plaintiffs relied upon misrepresentations incorporated into the Settlement Agreement, the purported merger clause does not bar Plaintiffs' claims. Execution of the Settlement Agreement does not bar Plaintiffs' claims in the action removed to this Court.

### 2. The Fraud Claims

To establish a prima facie case of fraud under Georgia law, Plaintiffs must prove the following elements: "(1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." Engelman v. Kessler, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017) (internal citations omitted).

Plaintiffs allege that in executing the allegedly fraudulent Swinton Affidavit, Defendants, including Ms. Swinton, knowingly and falsely represented that the Umbrella Policy was unavailable to cover the loss from their son's accident. Plaintiffs further allege damages resulting from their reliance on Defendants' representations which were made with the intent that Plaintiffs settle their claims for an amount less than they otherwise would have had they known about the availability of the additional coverage.

Defendants argue that the Complaint does not state a fraud claim against Ms. Swinton because Plaintiffs fail to establish the element of justifiable reliance. Defendants argue that Plaintiffs could not have justifiably relied on Ms. Swinton's alleged misrepresentation because they "could have and should have discovered [Ms.] Swinton's alleged misrepresentation" after conducting proper due diligence and that instead of justifiable reliance, "Plaintiffs paint a picture of justifiable mistrust." ([17] at 22). In other words, Defendants argue that, as a matter of law, Plaintiffs' reliance on Defendants' representations was not justifiable given the "adversarial and contentious relationship" between Plaintiffs and the Insurers during settlement negotiations. (Id. at 23). This argument is not persuasive and misapplies Defendants' burden in removing this case to this Court, which is to

show, by clear and convincing evidence, there is no possibility Plaintiffs can establish a cause of action against Ms. Swinton.

The Complaint alleges Defendants' repeated assurances that the cancelation of the Umbrella Policy "was signed by the insured" and "was clearly canceled effective January 31, 2014, before this incident ever occurred." (Compl. ¶ 31, 33). The Complaint alleges that in entering into the Settlement Agreement, Plaintiffs sought additional assurances that the Umbrella Policy was unavailable to cover the loss from the accident and, in response to those requests, the Swinton Affidavit was provided and attached to the Settlement Agreement to show it was relied upon by Plaintiffs in executing the agreement. On these facts, the Court does not find that the Complaint fails to allege justifiable reliance as a matter of law. See Hagan v. Keyes, 764 S.E.2d 423, 426 (Ga. Ct. App. 2014) (issue of reliance properly reserved for the jury where "there was some evidence" that plaintiff justifiably relied). The Complaint adequately alleges Plaintiffs justifiably relied on Defendants' fraudulent representations, including those made by Ms. Swinton. Plaintiffs have shown they have asserted a possibly valid claim and remand is required.

### 3. The Georgia RICO Act

Georgia's RICO Act makes in unlawful "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). "The statute does not require proof of an enterprise. . . . Rather, under the Georgia civil RICO statute, the plaintiffs need only establish racketeering activity; that is, a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16–14–3(9)) at least twice." Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 663 (11th Cir. 2015) (internal quotations and citations omitted).

The Georgia RICO Act defines "pattern of racketeering activity" as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated." O.C.G.A. § 16-14-3(4). "[T]he two alleged predicate incidents must be sufficiently linked to form a RICO pattern, but nevertheless sufficiently distinguishable so that they do not become 'two sides of the same coin.'" S. Intermodal Logistics, Inc. v. D.J. Powers Co., 10 F. Supp. 2d 1337, 1359 (S.D. Ga. 1998). "[W]hile alleged predicate acts can be too dissimilar and disconnected

15

to constitute a pattern of racketeering activity, such acts can also be too indistinguishable to give rise to such a pattern—even if a court could technically ascribe more than one criminal offense to different aspects of the conduct." McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1253 (11th Cir. 2016).

Here, Plaintiffs allege that Defendants, including Ms. Swinton, acquired or maintained an interest in or control of money by falsely denying the existence of additional insurance coverage available for Plaintiffs' injuries and settlement. Plaintiffs allege several distinct acts which establish at least two predicate acts. Plaintiffs properly allege that Defendants, including Ms. Swinton, committed mail and wire fraud, and made false statements and writings, on several separate occasions. (Compl. ¶ 65-93). First, the Complaint alleges that on December 16, 2014, in response to Plaintiffs' inquiry of available insurance, Defendants sent a letter falsely stating that "Our investigation shows there is no coverage under the policy to pay your claim." (Id. ¶ 67). The Complaint further alleges that on August 17, 2015, and on September 18, 2015, in response to Plaintiffs' continued requests for disclosure of all available insurance, Defendants' counsel sent a letter misrepresenting the insurance coverage available to Marietta Motorsports and failing to disclose all available insurance. (Id. ¶¶ 68-69). The Complaint alleges

that on October 30, 2015, Defendants counsel sent a letter falsely stating that the then-recently identified Umbrella Policy "was clearly canceled effective January 31, 2014, before this incident ever occurred." (Id. ¶ 70). The Complaint further alleges that Defendants committed wire fraud on March 6, 2015, by transmission of the false statement that that "the policy was rescinded back to the date of the incident." (Id. ¶ 79). Accepting these facts as true, Plaintiffs properly allege that Defendants, including Ms. Swinton, committed predicate acts "at least twice" to state a claim under the Georgia RICO Act. The Court concludes that Plaintiffs have stated a possibly valid claim against Ms. Swinton and, for this additional reason, Defendants cannot show that she was fraudulently joined.

Defendants fail to show that there is no possibility that a Georgia state court could find that Plaintiffs adequately pleaded a viable claim against Ms. Swinton. Accordingly, her joinder as a defendant was not improper and complete diversity among the parties does not exist. This Court lacks subject matter jurisdiction over the Complaint and, as a result, this action is required to be remanded.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs John W. Storey and Suzanne L. Storey Motion to Remand [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Francina Swinton's Motion to Dismiss Francina Swinton as an Improperly Named Party [3] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants Owners Insurance Company and Auto-Owners Insurance Company's Joint Motion to Dismiss [4]is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action be remanded to State Court of Gwinnett County.

**SO ORDERED** this 16th day of February, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE